IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Norfolk Southern Railway Company, | ) | C.A. No. 3:25-cv-6618- SAL _____ |
| Plaintiff, | ) | |
| v. | ) | **COMPLAINT** |
| American Italian Pasta Company, and Treehouse Foods, Inc., | ) | **(Jury Trial Requested)** |
| Defendants. | ) | |

COMES NOW Plaintiff, Norfolk Southern Railway Company ("Norfolk Southern" or "NS"), by and through undersigned counsel, and for its complaint against Defendants, American Italian Pasta Company ("AIPC"), and Treehouse Foods, Inc. ("Treehouse"), alleges and states the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Norfolk Southern is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in Atlanta, Georgia.

2. Defendant AIPC is, upon information and belief, a corporation organized under the laws of the State of Delaware with its principal place of business in Columbia, South Carolina.

3. Defendant Treehouse is, upon information and belief, a corporation organized under the laws of the State of Delaware with its principal place of business in Columbia, South Carolina.

4. Defendant Treehouse, upon information and belief, acquired Defendant AIPC in 2016 and was the parent company of AIPC on July 11, 2022.

1

5. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendants because they personally availed themselves of the benefits and privileges of doing business and/or owning property in the State of South Carolina. Further, Defendants committed one or more torts alleged herein in South Carolina, which proximately caused Norfolk Southern to incur damages in South Carolina, as further stated herein.

7. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) in that the events and omissions giving rise to the claim occurred in this District and the property that is the subject of this action is situated in this District and/or pursuant to 28 U.S.C. § 1391(b)(3) in that Defendants are subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL BACKGROUND

8. Norfolk Southern is a common carrier by rail that operates railway lines and provides freight rail services in twenty-two (22) states and the District of Columbia.

9. At all times pertinent hereto, Norfolk Southern provided freight rail services in the State of South Carolina over rail lines totaling approximately 679 route miles.

10. At the time of the incident at issue, Defendant AIPC and/or Defendant Treehouse owned and operated a facility in Columbia, South Carolina with an industry rail track connecting to Norfolk Southern's mainline track. Defendant AIPC and/or Defendant Treehouse owned at least one engine/locomotive that was operated by Defendant AIPC's and/or Defendant Treehouse's employees within the facility property.

11.     On July 28, 1995, Norfolk Southern and AIPC signed the Siding Agreement ("Contract"), attached as **Exhibit 1**, which provided for the construction of AIPC's industry track and for Norfolk Southern to provide rail service to the industry.

12.     The effective date of the Contract was July 28, 1995.

13.     On December 19, 1997, Norfolk Southern and AIPC signed the Supplemental Agreement, attached as **Exhibit 2**, which provided for the construction of two additional storage tracks at the facility, one of which would include a double switch point derail. Both the Contract and the Supplemental Agreement were in force and binding on the parties at the time of the incident at issue in this case.

14.     Section 10 of the Contract provides in relevant part as follows:

> Except as otherwise provided in subsequent sections of this Agreement, the responsibility of the parties hereto, as between themselves, for death, personal injury and property loss and damage which occur by reason of or arise out of, or are incidental to, the construction, operation, maintenance, use, presence or removal of the Track or related facilities shall be determined and borne as follows:
> ...
> (b) Industry shall be solely responsible for and shall indemnify, protect and hold Railway harmless from all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury, or loss of or damage to property arising out of or in any manner incidental to the loading into or unloading from rail cars, or the handling, storage or transmission in connection with such loading or unloading, of hazardous or flammable materials (as defined in the regulations of the United States Department of Transportation), whether or not negligence on the part of the Railway may have caused or contributed to such death, injury, loss or damage, unless the Railway's negligence is the sole cause of such death, injury, loss or damage.
>
> (c) Industry shall be solely responsible for and shall indemnify, protect and hold Railway harmless from all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury, or loss of or damage to property, caused solely by the negligence of Industry, or of the officers, agents or employees of Industry, or which arise or grow out of the violation by Industry, its officers, agents, or employees, of any of the terms of this Agreement, or which are caused by the negligence of Industry concurring with the negligence of a third party.
> ...

> (g) In the event that this Agreement authorizes Industry to move or Industry does move any rail cars on the Track, then, notwithstanding any other provisions of this Agreement, Industry shall indemnify, protect and hold Railway harmless from and against any and all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property, arising or growing out of the movement of rail cars by Industry or its agents, regardless of whether the negligence of Railway may have caused or contributed to such injury, death, damage, or loss.

15. On the morning of July 11, 2022, Defendant AIPC's and/or Defendant Treehouse's employee Enrico Blanchett was operating and moving a locomotive via remote control on Defendant AIPC's and/or Defendant Treehouse's industry track referred to as Storage Track 1 as part of his employment duties with Defendant AIPC and/or Defendant Treehouse.

16. At all times relevant herein, Blanchett was acting in the course and scope of his duties as an employee of Defendant AIPC and/or Defendant Treehouse. Thus, Defendant AIPC and/or Defendant Treehouse are vicariously liable for Blanchett's negligence under the doctrine of respondeat superior.

17. Defendant AIPC and/or Defendant Treehouse failed to properly train Blanchett in the operation of the locomotive. He initially applied for and was hired by Defendant AIPC and/or Defendant Treehouse for a job that did not involve operating the locomotive before switching into a different job that did involve operating the locomotive. Blanchett was still within Defendant AIPC's and/or Defendant Treehouse's ninety-day introductory period for new hires on the date of the derailment.

18. Defendant AIPC and/or Defendant Treehouse had no written policies or procedures relating to operating the locomotive and had no formal training program to train their employees, like Blanchett, in proper train operations.

19. A device called a double switch point derail was installed on Storage Track 1 to protect Norfolk Southern's mainline track from unintended entry by rail equipment being moved

and/or positioned on Storage Track 1 during switching operations at Defendant AIPC's and/or Defendant Treehouse's facility.

20. The locomotive Blanchett was operating was pulling six loaded grain railcars eastward on Storage Track 1 toward Norfolk Southern's mainline track.

21. Blanchett operated the locomotive via remote control while riding on the sixth railcar at the rear of the train configuration, which was the furthest railcar away from the locomotive.

22. Blanchett failed to properly set up the air brakes prior to operating the locomotive which resulted in a significant decrease in braking capability.

23. As he rode the sixth railcar, Blanchett lost control of the locomotive engine and/or failed to properly control the locomotive he was operating and ran the locomotive and part of the first railcar over the double switch point derail.

24. The double switch point derail was lined in the derailing position and derailed the locomotive and first railcar to the left away from Norfolk Southern's mainline track as designed.

25. The derailed equipment operated by Blanchett then traveled off the rails and on the ground until it came to rest "in the foul" of Norfolk Southern's mainline track. "In the foul" means something is in close enough proximity to the tracks where it could be struck by a passing train or other type of rail equipment such as a hi-rail or track machine.

26. Following the derailment, Blanchett left the scene without warning or notifying Norfolk Southern about the derailed equipment fouling its mainline track and without requesting that anyone at AIPC and/or Treehouse provide warning to Norfolk Southern.

27. Defendant AIPC and Defendant Treehouse also failed to warn or given any notice to Norfolk Southern about the derailed equipment fouling the mainline track.

28. Defendant AIPC and Defendant Treehouse knew or should have known that Norfolk Southern trains travelling on the mainline track could collide with Defendant AIPC's and/or Defendant Treehouse's derailed equipment left in the foul on the mainline.

29. Defendant AIPC and Defendant Treehouse knew or should have known that failing to warn Norfolk Southern about derailed equipment fouling the mainline track could result in a collision.

30. At approximately 8:14 a.m. on July 11, 2022, Norfolk Southern Train 238 was traveling on the mainline track through Columbia, South Carolina in route to Charleston, South Carolina. Neither the crew operating Train 238 nor anyone else at Norfolk Southern was aware that Defendant AIPC's and/or Defendant Treehouse's employee had derailed an engine and railcar and left the equipment in the foul of the Norfolk Southern track.

31. When it reached Defendant AIPC's and/or Defendant Treehouse's facility, NS's Train 238 collided with the locomotive previously derailed by Blanchett and left by him in the foul of the track, which resulted in the derailment of Train 238.

32. The derailment of Train 238 resulted in substantial property damage to Norfolk Southern including loss or damage to three locomotives and multiple railcars, track and equipment damage, environmental costs and response costs including personnel expenses related to the derailment response, repair and remediation costs, train delays and other damages to be shown at trial.

33. The damages suffered by Norfolk Southern were directly and proximately caused by the negligent and reckless conduct by Blanchett and Defendant AIPC and/or Defendant Treehouse as set forth above.

34. In addition, the derailment of Train 238 resulted in injuries to the Norfolk Southern crew members operating the train.

35. The Norfolk Southern crew members, Raymond Rightmier and David Small, filed lawsuits against Norfolk Southern and Defendants in Richland County Circuit Court, Case Nos. 2022-CP40-05526 and 2023-CP-40-02115, respectively.

36. While Defendant AIPC agreed to indemnify Norfolk Southern for defense fees and costs incurred in defending both crew members' lawsuits, Defendant AIPC refused to offer any funds on behalf of Norfolk Southern to settle the crew members' claims against NS.

37. At its own expense, Norfolk Southern agreed to settlements with Rightmier and Small. These settlements expressly denied liability and contained no admissions of fault by Norfolk Southern.

38. The derailment of Defendant AIPC's and/or Defendant Treehouse's remote control locomotive by Blanchett was the direct and proximate cause of damages to Norfolk Southern including significant property damage including loss or damage to three locomotives and multiple railcars, track and equipment damage, environmental costs and response costs including personnel expenses related to the derailment response, repair, and remediation costs, train delays, costs associated with resolving the lawsuits filed by the NS crew members, and other damages to be shown at trial.

**FOR A FIRST CAUSE OF ACTION**
**(Contractual Indemnity)**

39. Plaintiff realleges and incorporates herein by reference all previous Paragraphs in their entirety as if fully set forth in this Paragraph.

40. At the time of the July 11, 2022 derailment, a binding and enforceable contract existed between Norfolk Southern and Defendant AIPC and/or Defendant Treehouse relating to

7

rail operations and construction of the track facilities at Defendant AIPC's and/or Defendant Treehouse's facility in Columbia, South Carolina.

41. The Contract provides in pertinent part as follows:

> Except as otherwise provided in subsequent sections of this Agreement, the responsibility of the parties hereto, as between themselves, for death, personal injury and property loss and damage which occur by reason of or arise out of, or are incidental to, the construction, operation, maintenance, use, presence or removal of the Track or related facilities shall be determined and borne as follows:
> ...
> (b) Industry shall be solely responsible for and shall indemnify, protect and hold Railway harmless from all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury, or loss of or damage to property arising out of or in any manner incidental to the loading into or unloading from rail cars, or the handling, storage or transmission in connection with such loading or unloading, of hazardous or flammable materials (as defined in the regulations of the United States Department of Transportation), whether or not negligence on the part of the Railway may have caused or contributed to such death, injury, loss or damage, unless the Railway's negligence is the sole cause of such death, injury, loss or damage.
>
> (c) Industry shall be solely responsible for and shall indemnify, protect and hold Railway harmless from all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury, or loss of or damage to property, caused solely by the negligence of Industry, or of the officers, agents or employees of Industry, or which arise or grow out of the violation by Industry, its officers, agents, or employees, of any of the terms of this Agreement, or which are caused by the negligence of Industry concurring with the negligence of a third party.
> ...
> (g) In the event that this Agreement authorizes Industry to move or Industry does move any rail cars on the Track, then, notwithstanding any other provisions of this Agreement, Industry shall indemnify, protect and hold Railway harmless from and against any and all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property, arising or growing out of the movement of rail cars by Industry or its agents, regardless of whether the negligence of Railway may have caused or contributed to such injury, death, damage, or loss.

42. On July 21, 2022, Norfolk Southern gave notice to Defendant AIPC of the injuries and damages incurred as a result of the July 11, 2022 derailment at Defendant AIPC's industry track and advised Defendant AIPC that Norfolk Southern was entitled to full indemnity from

Defendant AIPC for all costs, expenses and loss suffered as a result of the incident in accordance with the terms of the above-mentioned Contract.

43. Thereafter, Norfolk Southern sent multiple letters and emails to Defendant AIPC demanding that Defendant AIPC pay for the damages incurred by Norfolk Southern as a result of the derailment.

44. Defendant AIPC, although requested by Norfolk Southern to do so, has refused, and still refuses, to pay NS all or any of the damages and expenses incurred by NS relating to the derailment. Although Defendant AIPC did pay defense fees and costs related to the defense of the Small and Rightmier lawsuits, Defendant AIPC would not contribute any amounts toward the settlement of those claims despite repeated requests that it do so and despite notice that Norfolk Southern would settle the claims and hold Defendant AIPC responsible for the settlement amounts.

45. Under the clear and unequivocal terms of the Contract, Defendant AIPC and/or Defendant Treehouse are contractually obligated to indemnify Norfolk Southern from all damages and expenses arising from the derailment caused by Defendant AIPC's and/or Defendant Treehouse's employee's negligent movement of rail cars on Defendant AIPC's and/or Defendant Treehouse's industry track.

46. Defendant AIPC's and Defendant Treehouse's failure to reimburse Norfolk Southern for all damages it has incurred is a breach of the contract between the parties.

47. Defendant AIPC and/or Defendant Treehouse is also responsible for all attorneys' fees and costs incurred by Norfolk Southern in connection with this action. The Contract specifically provides for recovery of all "costs (including attorneys fees)." Thus, Norfolk Southern is also entitled to recover attorneys' fees to be calculated at the conclusion of this lawsuit.

## FOR A SECOND CAUSE OF ACTION
### (Equitable Indemnification)

48. Plaintiff realleges and incorporates herein by reference all previous Paragraphs in their entirety as if fully set forth in this Paragraph.

49. A special relationship between Norfolk Southern and Defendant AIPC and/or Defendant Treehouse exists because the parties have an ongoing business relationship and executed the Contract pursuant to which Defendant AIPC's and/or Defendant Treehouse's industry track was constructed.

50. As a result of the derailment caused by Defendant AIPC's and/or Defendant Treehouse's employee's negligent movement of rail cars on Defendant AIPC's and/or Defendant Treehouse's industry track, third parties asserted claims against Norfolk Southern for damages sustained as a result of the derailment.

51. Defendant AIPC and/or Defendant Treehouse are at fault in causing the damages of the third parties because the negligent and reckless conduct of Blanchett caused the derailment.

52. Norfolk Southern has no fault for those damages of third parties resulting from the derailment.

53. Norfolk Southern incurred expenses, including settlement amounts, that were necessary to protect its interests in defending the third parties' claims.

54. Norfolk Southern's right of equitable indemnity against Defendant AIPC and/or Defendant Treehouse warrants the recovery of Norfolk Southern's expenses that were necessary to protect its interests in defending the third parties' claims.

## FOR A THIRD CAUSE OF ACTION
### (Negligence)

55. Plaintiff realleges and incorporates herein by reference all previous Paragraphs in their entirety as if fully set forth in this Paragraph.

56. At all times material hereto, Enrico Blanchett, an employee of Defendant AIPC and/or Defendant Treehouse, acting within the course and scope of said employment, caused the remote control locomotive to derail and thereafter foul Norfolk Southern's mainline track and to remain in such position without rendering any warning whatsoever, and as a result thereof Defendant AIPC and/or Defendant Treehouse are vicariously liable for the negligent, reckless, willful, and/or wanton misconduct of their said employee under the doctrine of respondeat superior.

57. As the owner of the facility property and the industry rail track, Defendant AIPC and/or Defendant Treehouse, through their employees and agents, had a duty to properly control the movement of their locomotive and rail cars.

58. As the owner of the facility property and the industry rail track, Defendant AIPC and/or Defendant Treehouse, through their employees and agents, had a duty to warn Norfolk Southern about Defendant AIPC's and/or Defendant Treehouse's derailed equipment that fouled the mainline track.

59. Defendant AIPC and/or Defendant Treehouse, through their agents and employees, was negligent, careless, grossly negligent, and reckless in violation of duties owed to Plaintiff and, accordingly, are liable for one or more of the following acts or omissions, any or all of which are a departure from the prevailing and acceptable standard of care:

    a. Allowing its locomotive to foul the Norfolk Southern mainline track;

    b. Failing to promulgate and/or enforce rules, regulations, policies, or procedures for the safe and proper performance of its work, and ensuring safe working conditions in general to prevent its rail equipment from fouling the Norfolk Southern mainline track;

    c. Failing to follow industry custom and practice with regard to the control and operation of rail equipment on its industry track;

    d. Failing to train and educate Defendant AIPC's and/or Defendant Treehouse's employees in the methods, principles, and standards for operating and controlling rail equipment on an industry track; and

    e. Failing to warn Norfolk Southern or its employees of known or reasonably foreseeable dangers associated with Defendant AIPC's and/or Defendant Treehouse's rail equipment fouling the Norfolk Southern mainline track.

60. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness and departure from the applicable standards of care by Defendant AIPC and/or Defendant Treehouse and their agents, employees, and/or representatives, Norfolk Southern suffered injuries and damages, including significant property damage including loss or damage to three locomotives and multiple railcars, track and equipment damage, environmental costs and response costs including personnel expenses related to the derailment response, repair, and remediation costs, train delays, costs associated with resolving the lawsuits filed by the NS crew members, and other damage to be shown at trial.

## FOR A FOURTH CAUSE OF ACTION
### (Trespass)

61. Plaintiff realleges and incorporates herein by reference all previous Paragraphs in their entirety as if fully set forth in this Paragraph.

62. Blanchett's intentional movement and subsequent derailment of the locomotive engine was an affirmative act that invaded Norfolk Southern's property.

12

63. Defendant AIPC and/or Defendant Treehouse, through Blanchett, knew or should have known that derailing the locomotive engine and leaving it in the foul of the mainline track constituted an invasion of Norfolk Southern's property.

64. Blanchett's movement and subsequent derailment of the locomotive engine as described herein resulted in a physical invasion of Norfolk Southern's mainline track property that directly and proximately caused the derailment of Train 238, denying Norfolk Southern exclusive possession of its real property and personal property.

65. As a direct and proximate result of the trespass, Norfolk Southern suffered harm, injuries, and damages as described herein.

## FOR A FIFTH CAUSE OF ACTION
### (Punitive Damages)

66. Plaintiff realleges and reincorporates herein by reference all previous Paragraphs in their entirety as if fully set forth in this Paragraph.

67. Pursuant to S.C. Code § 15-32-510, Norfolk Southern hereby specifically prays for an award of punitive damages against Defendant AIPC and/or Defendant Treehouse.

68. Defendant AIPC and/or Defendant Treehouse, acting through their agents and employees, engaged in conduct, actions, and inactions detailed above that clearly and convincingly caused Norfolk Southern's harm due to Defendant AIPC's and/or Defendant Treehouse's willful, wanton, and reckless conduct, actions, and inactions.

69. Specifically, Defendant AIPC's and/or Defendant Treehouse's employee Blanchett, with full knowledge of the derailment of his locomotive engine and the dangers and potential for a collision with any train traveling on Norfolk Southern's mainline, willfully, wantonly, and recklessly failed to notify or warn or cause someone to notify or warn Norfolk

Southern of the derailed engine and danger and potential for a collision with any train traveling on the mainline.

70.     With full knowledge of the derailed locomotive engine and the dangers and potential for a collision with any train traveling on Norfolk Southern's mainline, Defendant AIPC's and/or Defendant Treehouse's employee Blanchett willfully, wantonly, and recklessly left the scene and Defendant AIPC's and/or Defendant Treehouse's facility at least one hour before the collision with Train 238.

71.     The willful, wanton, and reckless conduct, actions, and inactions of Defendant AIPC's and/or Defendant Treehouse's employee Blanchett resulting in harm and damages to Norfolk Southern are imputed to Defendant AIPC and/or Defendant Treehouse as a matter of law such that the award of punitive damages against Defendant AIPC and/or Defendant Treehouse are warranted and just in an amount to be determined by a jury.

WHEREFORE, Plaintiff Norfolk Southern respectfully prays for judgment against the Defendants for actual damages, punitive damages and consequential damages, all damages to which Norfolk Southern is entitled under the parties' Contract and applicable law, reasonable attorneys' fees and costs as permitted by the parties' Contract and/or applicable law, pre- and post-judgment interest, and for such other and further relief as this Court deems proper.

July 1, 2025

*s/ Ronald K. Wray, II*
Ronald K. Wray, II (Fed Bar # 5763)
William E. Whitney, III (Fed Bar # 14024)
GALLIVAN, WHITE & BOYD, P.A.
55 Beattie Place, Suite 1200
P.O. Box 10589
Greenville, SC 29603
Telephone:  (864) 271-5362
Facsimile:  (864) 271-7502
rwray@gwblawfirm.com
wwhitney@gwblawfirm.com

Attorneys for Plaintiff
Norfolk Southern Railway Company

15