# EXHIBIT 1



**2982-981**

# NORFOLK SOUTHERN

Norfolk Southern Corporation
Real Estate and Contract Services
Suite 1650, One Georgia Center
600 West Peachtree Street, N.W.
Atlanta, GA 30308-3603

L. H. Goodlett
Contracting Specialist
My Direct Line Is:
Phone: (404) 529-2378
FAX: (404) 527-2783

August 16, 1995

Activity: 1001494

Mr. Norman R. Abreo
Sr. Vice President, Manufacturing
American Italian Pasta Company
1000 Italian Way
Excelsior Springs, MO 64024

RE: **COLUMBIA**, South Carolina - Agreement dated and effective July 28, 1995 between Norfolk Southern Railway Company and American Italian Pasta Company.

Dear Mr. Abreo:

Enclosed for your records is a fully executed copy of the agreement stated above concerning the construction of two (2) industrial tracks at Columbia, South Carolina.

Thank you for your cooperation and if I may be of assistance in the future, please contact me at the telephone number shown above.

Sincerely,

Lillian H. Goodlett

Enc.
LHG:dsg

bc:
Mr. J. R. Kibler: Attached is fully executed agreement for filing in Archives.
Mr. E. Green: Copy of fully executed agreement attached for your records.
Mr. T. L. Ingram
Mr. M. S. Dewberry



RECEIVED
ARCHIVES

AUG 1 8 1995

JRK  RDM
RDP  GWH
     MAB
COMPLETED

SIDING AGREEMENT

THIS SIDING AGREEMENT ("Agreement"), made as of the 28th day of JULY, 19 95, between NORFOLK SOUTHERN RAILWAY COMPANY (hereinafter referred to as "Railway") and AMERICAN ITALIAN PASTA COMPANY (hereinafter referred to as "Industry").

WITNESSETH:

Railway and Industry agree as follows:

DESCRIPTION OF TRACK

1. Railway will provide rail service on the industrial track or tracks which are described below and which are hereinafter referred to as "Track":

> Track No. 1, 2840 feet in length, and Track No. 2, 1034 feet in length, at
> COLUMBIA, South Carolina;

as shown on print of Plan No. AF-0471, dated February 6, 1995, attached hereto and made a part hereof.

CONSTRUCTION

2. The Track will be constructed in accordance with the terms and conditions set forth in Exhibit A, attached hereto and made a part hereof.

OPERATION

3. (a) The Track will be maintained and operated in accordance with the terms and conditions set forth in this Agreement. Such terms and conditions will apply to all extensions of, additions to and relocations of the Track; but Railway will not be obligated to operate over any such extensions, additions or relocations unless they have been approved, in writing, by Railway.

(b) Railway hereby authorizes the construction, maintenance and operation by Industry of any unloading pit, tipple, conveyor, Special Facilities (as defined in Section 15 hereof), private road crossing, gate or door affecting the Track as shown on the attached drawing.

RIGHT-OF-WAY

4. Industry hereby guarantees to Railway the right and authority to operate over any portion of the Track, and the tracks of any third party necessary to provide service to the Track, located beyond the right-of-way of Railway or upon any public roadway. Railway hereby licenses and consents to the use of so much of its right-of-way as may be necessary for the construction and maintenance of that portion of the Track owned by Industry located thereon.

USE FOR THIRD PARTIES

5. Railway shall have complete control of its operations on the Track and may use the same for the business of third parties. However, any such use of the portion of the Track owned by Industry shall not

interfere unreasonably with the business of Industry and Railway will not use that portion of the Track owned by the Industry to provide service to third parties without the consent of Industry.

## OWNERSHIP

6. Ownership of the rails, materials and fixtures in the Track shall be as indicated on the attached plan.

## MAINTENANCE

7. Industry will, at its expense, maintain that portion of the Track owned by it and all adjacent track walkways in good condition and repair and free from all debris. In the event that the portion of the Track owned by Industry now or in the future crosses or is crossed by any public roadway, Industry will, at its expense, maintain any such crossing in good condition and repair and in accordance with all applicable requirements of governmental authorities. Industry also shall arrange for and bear all expense related to the installation and maintenance of any grade separation structures and warning devices for any road crossings of the portion of the Track owned by Industry.

## RAILWAY'S RIGHT TO DISCONTINUE OPERATION

8. Railway may, in its sole discretion, discontinue the operation of the Track immediately and without notice if Railway determines that the condition of the Track or the tracks of any other party necessary to provide service over the Track are unsafe.

## CLEARANCES

9. (a) Industry agrees, except for any structures shown on the attached drawing which do not conform to the standard clearances of Railway, to observe and maintain all clearances in accordance with the applicable specifications shown on Exhibit B, attached hereto and made a part hereof. Industry will not permit any other structure or obstruction of any kind to be placed or maintained within the restricted clearance zone. If the laws or regulations of any governmental authority having jurisdiction over the Track require clearances greater than those required by Railway, Industry will comply with the requirements of such laws or regulations.

(b) If any clearances shown on the attached drawing do not conform to the clearances shown on Exhibit B, Industry may maintain any structures shown at reduced clearance provided that Industry shall provide and maintain warning signs, at its expense, that are acceptable to Railway, at locations designated and approved by Railway.

## LIABILITY

10. Except as otherwise provided in subsequent sections of this Agreement, the responsibility of the parties hereto, as between themselves, for death, personal injury and property loss and damage which occur by reason of or arise out of, or are incidental to, the construction, operation, maintenance, use, presence or removal of the Track or related facilities shall be determined and borne as follows:

(a) Except for loss of or damage to the property of Railway caused solely by the negligence of Railway, Industry shall be solely responsible for and shall indemnify, protect and hold Railway harmless from all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by loss of or damage to any property by fire.

(b) Industry shall be solely responsible for and shall indemnify, protect and hold Railway harmless from all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury, or loss of or damage to property arising out of or in any manner incidental to the loading into or unloading from rail cars, or the handling, storage or transmission in connection with such loading or unloading, of hazardous or flammable materials (as defined in the regulations of the United States Department of Transportation), whether or not negligence on the part of the Railway may have caused or contributed to such death, injury, loss or damage, unless the Railway's negligence is the sole cause of such death, injury, loss or damage.

(c) Industry shall be solely responsible for and shall indemnify, protect and hold Railway harmless from all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury, or loss of or damage to property, caused solely by the negligence of Industry, or of the officers, agents or employees of Industry, or which arise or grow out of the violation by Industry, its officers, agents, or employees, of any of the terms of this Agreement, or which are caused by the negligence of Industry concurring with the negligence of a third party.

(d) Except as may be otherwise provided in subsections (a), (b), and (c) of this Section, Railway and Industry shall be jointly responsible for and shall bear equally all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property caused by their joint and concurring negligence.

(e) Notwithstanding anything contained in this Section, and irrespective of the sole, joint, or concurring negligence of Railway, Industry shall assume sole responsibility for and shall indemnify, protect and hold Railway harmless from all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury, or loss of or damage to property, and from any fines or penalties, arising or growing out of any permitted reduced clearances shown on the attached drawing which do not conform to the clearances shown on the attached Exhibit B; or the failure of Industry to comply with the clearance requirements of this Agreement. In this connection, it is understood that knowledge on the part of Railway of a violation of any such clearance requirements, whether such knowledge is actual or implied, shall not constitute a waiver and shall not relieve Industry of its obligations to indemnify Railway under this Agreement.

(f) In the event that this Agreement authorizes the installation of or if Industry shall at any time install an unloading pit, a tipple, a conveyor or any other Special Facilities (as defined in Section 15 hereof), then, notwithstanding any other provisions of this Agreement, Industry shall indemnify, protect and hold Railway harmless from and against any and all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property, arising or growing out of the installation, use, maintenance or removal of any such unloading pit, tipple, conveyor, or Special Facilities, regardless of whether the negligence of Railway may have caused or contributed to such injury, death, damage or loss.

(g) In the event that this Agreement authorizes Industry to move or Industry does move any rail cars on the Track, then, notwithstanding any other provisions of this Agreement, Industry shall indemnify, protect and hold Railway harmless from and against any and all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property, arising or growing out of the movement of rail cars by Industry or its agents, regardless of whether the negligence of Railway may have caused or contributed to such injury, death, damage or loss.

(h) In the event that this Agreement authorizes Industry to install or if Industry shall hereafter install a private road crossing, gate or door across the Track, Industry shall indemnify, protect and hold Railway harmless from and against all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property, arising or growing out of the installation, maintenance, use or removal of said private road crossing, gate or door, or by reason of the presence of the same, whether or not the negligence of the Railway may have contributed to such injury, death, damage or loss unless such injury, death, damage or loss was caused solely by the negligence of Railway.

(i) Notwithstanding any requirement under this Agreement that track construction by the Industry shall be to the satisfaction of Railway and that Industry shall do all grading and furnish all such drainage facilities as may be necessary and required by Railway, Industry shall be solely responsible for, shall indemnify, protect and hold Railway harmless from and against all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property arising or growing out of any grading or drainage done by or provided by the Industry.

(j) Knowledge on the part of Railway of any violation of any of the terms of this Agreement by Industry shall constitute neither negligence nor acquiescence on the part of Railway, and shall in no event relieve Industry of any of the responsibilities and indemnity obligations assumed by Industry in this Agreement.

(k) The term Railway as used in this Section and Section 11 below, shall include the officers, agents, and employees of Railway. Industry further agrees that each and all of its indemnity commitments in this Agreement shall extend to and include the parent and all subsidiary and affiliated companies of Railway and their respective officers, agents and employees.

ENVIRONMENTAL REQUIREMENTS

11. (a) In its use and occupancy of the Track and adjoining premises, Industry will comply with all federal, state, and local laws, rules, regulations and ordinances which relate to the control of air, water, noise, solid waste and other pollution or to the storage, transport, release or disposal of hazardous materials, substances, or waste. Industry will, at its own expense, make all modifications, repairs, or additions to the Track and adjoining premises necessary to effect such compliance, and Industry will install and bear the expense of any and all structures, devices or equipment required by any such laws, rules, regulations or ordinances, or by the orders of any governmental agency.

(b) Industry shall not dispose of any wastes of any kind, whether or not hazardous, on the right of way of Railway, and Industry shall not conduct any activity on said right of way which may or

- 4 -

does require a hazardous waste treatment, storage or disposal facility permit from either the federal or state agencies.

    (c)  Regardless of any Railway acquiescence, Industry agrees to indemnify, protect and hold Railway harmless from and against all liabilities, fines and penalties arising or growing out of a violation of subsections (a) and (b) of this Section, and Industry agrees to reimburse Railway for all costs and expenses incurred by Railway in eliminating or remedying such violations unless such liability, fines, or penalties arise solely from the negligence of Railway. Regardless of any Railway acquiescence and notwithstanding any of the provisions of Section 10 above, Industry shall indemnify, protect and hold Railway harmless from and against all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses for any losses, personal injury to or death of any person or persons whomsoever, damage to or loss of any property whatsoever, and all penalties arising or growing out of Industry's use or release of any hazardous material, substance or waste onto the ground or into the water or air from or upon the Track or adjoining premises, unless resulting solely from the negligence of Railway.

    (d)  Industry hereby waives any and all statutes of limitation applicable to claims, demands or suits by Railway under the preceding subsections of this Section, and Industry further agrees that it will not raise or plead a statute of limitation defense against Railway in any claim, action or proceeding arising or growing out of Industry's failure to comply with this Section.

## LOADING AND UNLOADING

  12.  Whenever Industry loads or unloads any rail car by using hoses, pipes, conveyors or any other mechanical devices, a sign measuring at least 12 inches by 15 inches, with letters at least four inches high, reading "STOP - CAR CONNECTED", shall be placed at a conspicuous location clearly visible to Railway employees operating on the Track, from either direction. Said sign shall be conspicuously illuminated during periods of reduced visibility and shall remain in place until such loading or unloading is completed and until such pipes, conveyors and/or mechanical devices have been disconnected.

## RAILWAY'S OBLIGATION

  13.  Railway shall not be liable as a common carrier, or as a bailee, for any property loaded into any car on the Track until such car is attached or coupled to the engine or train by which it is to be moved from the Track toward its destination. Until a car is so attached or coupled, the car and its contents shall be deemed and held to be in the possession of Industry insofar as responsibility therefor and liability related thereto are concerned. All carload shipments consigned to or in the care of Industry for delivery on the Track shall be deemed to have been fully and completely delivered as soon as the car or cars containing such shipments shall have been placed on the Track and detached from the engine or train by which it was moved, and Railway shall thereupon be relieved of any further liability therefor, either as a common carrier or as a bailee.

## HAZARDOUS MATERIALS

14. If Industry ships, receives or handles any material on or about the Track which is classified as a hazardous material by the regulations of the United States Department of Transportation, the following subsections shall apply:

(a) Industry, at its own expense, shall comply with the policies and practices recommended by the Association of American Railroads and the Railway, and with all applicable federal, state or municipal laws, orders, regulations and recommendations relating to safe handling, storage and disposition of the hazardous materials.

(b) Industry, at its sole expense, will procure and at all times during the life of this Agreement maintain in effect a policy or policies of Commercial General Liability Insurance, which shall contain a contractual liability endorsement specifically covering the liabilities imposed upon Industry by this Agreement. Said insurance policy or policies shall provide minimum coverage of at least $2 million per occurrence as a combined single limit for bodily injury and property damage. Industry will furnish to Railway's Risk Manager, Norfolk Southern Corporation, Three Commercial Place, Norfolk, Virginia 23510-2191, a certified copy of said policy. Such policy must provide for thirty (30) days' advance written notice to the Railway prior to any termination of or changes in such insurance. The furnishing by Industry of such evidence of insurance and its acceptance by Railway is not intended to and shall not reduce, limit, affect or modify in any way the obligations and liabilities of Industry under any provision of this Agreement or otherwise.

(c) If any hazardous material handled on the Track is flammable or explosive, Industry hereby agrees that it will, at its sole cost and expense, and in a manner satisfactory and acceptable to Railway, arrange for installation of: (i) such derail devices as may be specified by Railway at locations on the Track designated by Railway; (ii) such bonding and grounding of the Track as shall be required by Railway; and (iii) such other protective devices as may be required by Railway to protect the Track against any foreign or stray electric current that may be present at or in the vicinity of said Track.

(d) Title to the derail, bonding, grounding and other protective devices installed on the portion of the Track owned by Industry will be vested in Industry. Industry will maintain all such devices, at its sole cost and expense, in good condition and repair and in a manner satisfactory to Railway. At Railway's discretion, Railway may elect to maintain any such devices at the cost of Industry.

## GATES, DOORS, PITS, PRIVATE ROAD CROSSING AND RAIL-RELATED STRUCTURES

15. If Industry shall have constructed or shall construct at any time: (1) a gate or gates across the Track; (2) a doorway and/or door(s) affecting the Track; (3) any pit or pit appurtenances beneath the Track; (4) a private road crossing of the Track; or (5) rail-related structures, including but not limited to conveyors or similar apparatus, bridges, platforms, walkways, pipes or similar structures ("Special Facilities") adjacent to or over the Track, the following subsections shall apply:

(a) Any gate constructed or maintained by Industry shall be constructed, maintained, and renewed at Industry's sole cost and expense. The gate shall be of such design and specification as may be approved in writing by Railway and shall be equipped with Railway's standard switch lock, so applied that

said gate may be locked and unlocked from the outside, and shall be constructed in such manner as to provide, when opened, an unobstructed space on each side of the center line of the Track of not less that 9.0 feet and a total clearance of not less than 18 feet. Industry shall provide a substantial device on each side of the Track to which the wings of said gate may be fastened and made parallel, or substantially parallel, with the Track when railroad equipment is moving through the gateway, each of said devices to be so arranged that when the wings of the gate are fastened thereto the distance between the side of each wing and the center of the Track will not be less than 9.0 feet in the clear.

(b) Any door constructed or maintained by Industry shall be constructed, maintained, and renewed at Industry's sole cost and expense. The door shall be of such design and specification as may be approved in writing by Railway. Said door shall provide, when opened, an unobstructed space over and above the Track of not less than 22 feet vertical from the top of rail and 8 feet horizontal from the center line of the Track. Industry shall provide a substantial device to which said door will be fastened and made stationary when railroad equipment is moving through the doorway, said device to be so arranged that when the door is in an open position and fastened thereto, the overhead clearance for the Track will be at no point less than 22 feet from the top of rail and the horizontal clearance will not be less than 8 feet from the center of the Track.

(c) Any pit and pit appurtenances constructed or maintained by Industry shall be constructed, maintained, and renewed at Industry's sole cost and expense. The pit shall be of such design and specification as may be approved in writing by Railway. Industry will maintain the unloading pit and appurtenances at its sole cost and to the entire satisfaction of Railway. Industry will maintain the pit and appurtenances in such condition that neither they nor the use thereof by Industry shall be or become an obstruction to the safe and proper maintenance of the Track, or endanger employees of Railway or other persons on or about the Track, or operations of Railway upon the Track. Industry agrees to provide a substantial metal or board cover for said pit, as approved by Railway, and agrees to keep said pit covered at all times when the pit is not in use.

(d) Any private road crossings constructed or maintained by Industry shall be constructed, maintained, and renewed at Industry's sole cost and expense. The private road crossings shall be of such design and specification as may be approved in writing by Railway. Industry will maintain the private road crossings in such condition that neither they nor the use thereof by Industry shall be or become an obstruction to the safe and proper maintenance of the Track, or endanger employees of Railway or other persons on or about the Track, or operations of Railway upon the Track.

(e) Any Special Facilities constructed or maintained by Industry shall be constructed, maintained, and renewed at Industry's sole cost and expense. The Special Facilities shall be of such design and specification as may be approved in writing by Railway. Industry will maintain the Special Facilities in such condition that neither they nor the use thereof by Industry shall be or become an obstruction to the safe and proper maintenance of the Track, or endanger employees of Railway or other persons on or about the Track, or operations of Railway upon the Track.

(f) If any of the facilities referred to in this Section are located upon the right-of-way or property of Railway, Industry will, upon the termination of this Agreement, remove those facilities and restore the premises of Railway to the condition existing prior to their construction, or in default thereof, Railway may, in addition to any other legal remedy it may have, remove the facilities and restore its premises

at the expense of Industry. The fact that the design, maintenance, repair or alteration of any of the aforesaid facilities shall have been approved by or performed under the supervision and to the satisfaction of Railway shall not relieve Industry from responsibility or liability undertaken for any injury to or death of any person or damage to property that may occur or arise as the result of the construction, maintenance, presence, use, operation and removal of the facilities.

(g) If any of the facilities referred to in this Section are being maintained at clearances from the track that are less than the clearances specified, the provisions of Sections 9 and 10(e) shall also be applicable to those facilities.

## GOVERNMENTAL AUTHORITY

16. Notwithstanding any other provision of this Agreement, Industry agrees to comply, at its sole expense, with all requirements imposed by any governmental authority with respect to that portion of the Track which is owned by Industry or which it has the obligation to maintain.

## SUCCESSORS, ASSIGNS AND THIRD-PARTY RIGHTS

17. (a) Railway and Industry agree that the provisions of this Agreement shall inure to the benefit of the successors and assigns of Railway. Industry agrees that in the event it permits a third party to use the Track, it will furnish Railway written notice in advance of any such third-party use. Industry further agrees that, until the use of the Track by any such third party shall be covered by an appropriate agreement between said third party and Railway, use by such third party will be deemed and treated as a use by Industry under this Agreement, and Industry will be responsible therefor to the same extent as if such third party use were a use by Industry.

(b) This Agreement is not assignable or transferable by Industry, in whole or in part, except with the advance written consent of Railway, which consent will not be unreasonably withheld.

## TRACK REMOVAL

18. Upon the termination of this Agreement, Railway may discontinue the operation of the Track and remove its property from the premises. Industry immediately will take up and remove the track materials in that portion of the Track owned by Industry which is located upon Railway's right-of-way or property. The work of taking up said Track materials on Railway's right-of-way or property will be done, if Industry fails to complete such work within a reasonable time after the termination of this Agreement, by Railway at the expense of Industry.

## RIGHT TO DISCONTINUE OPERATIONS

19. Notwithstanding any other provision of this Agreement, if Industry shall fail to comply with any of the terms of this Agreement, and such failure shall, in Railway's judgment, make operation of the Track unsafe or dangerous, Railway shall have the right to immediately discontinue operation of the Track, without liability to Industry.

### NO WAIVER OF BREACH

20. No waiver by Railway of any breach by Industry of the terms of this Agreement shall be construed as a waiver of any other or subsequent breach. Termination of this Agreement shall not be construed to release Industry from any obligation or liability accruing hereunder prior to the time such termination becomes fully effective.

### NOTICES

21. Any notice required to be given pursuant to the terms of this Agreement shall be given in writing and shall be transmitted by U. S. Mail, by any other method customarily used in normal business practice, or by hand delivery. Any notice to be given pursuant to this Agreement shall be transmitted to the respective parties at the following addresses or at such other places as the parties may from time to time designate in writing:

| | |
|---|---|
| As to Railway: | Norfolk Southern Railway Company<br>Division Superintendent<br>1120 W. Washington Street<br>Greenville, South Carolina 29601 |
| As to Industry: | American Italian Pasta Company<br>1000 Italian Way<br>Excelsior Springs, Missouri 64024 |

### EFFECTIVE DATE AND TERMINATION

22. This Agreement shall be effective as of the date first above written. Either Railway or Industry may terminate this Agreement at any time upon sixty (60) days' written notice.

### CONSTRUCTION OF AGREEMENT

23. The headings used in this Agreement are for convenience only and shall not affect the construction or interpretation of any section of this Agreement. If any provision of this Agreement or any part of any provision should become or be found to be invalid or unenforceable, the remaining provisions and parts shall continue to be fully effective and enforceable. Where necessary or appropriate in this Agreement, the singular and plural shall be interchangeable and words of any gender shall include all genders.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

WITNESS:  NORFOLK SOUTHERN RAILWAY COMPANY

*Linda W. Helm*  By _____
  General Manager

WITNESS:  AMERICAN ITALIAN PASTA COMPANY

  By _____
  Title: Plant Manager

com.doc Rev. 1-9-95; 1001494.ta1
LHG:jhs; 1001494; 6-28-95

- 10 -

# EXHIBIT A

1. Railway will construct that portion of the Track to be owned by Railway, and Industry will, at its own cost and expense, construct to the satisfaction of Railway the portion of the Track to be owned by it, which ownership is indicated on the Plan attached to the Agreement.

2. Industry will, as a condition precedent to any obligation on the part of Railway to begin the construction of Railway's portion of the Track: (a) provide the grading and furnish and install all drainage facilities as may be necessary and required by Railway for the construction of the Track; (b) arrange for alterations of utility lines and pipelines of third parties as may be required by Railway for the construction of the Track; and (c) pay to Railway the sum of $41,000.00, which is the cost of constructing the portion of the Track to be constructed by Railway, which cost includes the estimated cost of construction, engineering, signal connections and those alterations in communications or signal lines of Railway required for the construction of the Track.

exa-d.doc
Revised 1-10-95



