UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Norfolk Southern Railway Company, *Plaintiff*, Versus American Italian Pasta Company, *Defendant*. | ) | C/A No. 3:25-cv-06618-SAL **MEMORANDUM IN SUPPORT OF DEFENDANT AMERICAN ITALIAN PASTA COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** |

The Defendant American Italian Pasta Company is moving pursuant to Rule 12(c) and Rule 56 of the Federal Rules of Civil Procedure, for an order granting judgment to this Defendant on the Plaintiff's First Cause of Action for Contractual Indemnity on the ground that the contractual provision upon which the Plaintiff relies does not apply to the facts as alleged, and the indemnity clause of Section 10(g) does not meet the applicable clear and unequivocal standard required by the controlling caselaw in South Carolina.

**Concise Summary of the Nature of the Case**

The Plaintiff brings this action seeking contractual indemnity from Defendant American Italian Pasta Company (AIPC) under the terms of a 1995 "Siding Agreement" between Plaintiff Norfolk Southern (designated in the Agreement as "Railway") and Defendant AIPC (designated therein as "Industry"), in connection with two industrial tracks that had had been constructed on AIPC's property to allow Norfolk Southern to provide service for pickup and drop-off of railcars at the AIPC plant in Columbia, South Carolina. [ECF 1 – Complaint, Exhibit A.] Norfolk Southern seeks indemnification under this Siding Agreement for damages arising from a certain accident/incident that occurred on July 11, 2022, when Norfolk Southern's Train 238 collided with

a locomotive that an AIPC employee had left derailed in the foul[1] of Norfolk Southern's mainline track after having run over a double switch point derail[2] beyond Industry Track 1. The questions of law presented in this motion are (1) whether the collision is covered by the indemnity provisions of the Siding Agreement and/or (2) the indemnity provisions of the Siding Agreement satisfy the applicable/controlling clear and unequivocal standard to allow the Railway to seek indemnification for its negligence, whether sole or concurrent. *Concord & Cumberland Horizontal Property Regime v. Concord & Cumberland, LLC,* 424 S.C. 639, 819 S.E.2d 166 (Ct. App. 2018).

**Concise Statement of the Pertinent Facts**

***The Underlying Accident/Incident***

As alleged in the pleadings, on July 11, 2022, an AIPC employee was operating and moving a locomotive pulling six loaded grain railcars via remote control on Track 1. [ECF 1 - ¶¶15, 20.] As alleged, the employee lost control of the locomotive engine and ran the locomotive and the first railcar over the double switch point derail. [ECF 1 - ¶¶ 22, 23.] The derailed locomotive and railcar traveled off the rails of Track 1 and came to rest in the foul of the mainline track. [ECF 1 - ¶ 25.] The AIPC employee left the scene without warning or notifying Norfolk Southern of the

[1] "*Fouling a track* means the placement of an individual or an item of equipment in such proximity to a track that the individual or equipment could be struck by a moving train or on-track equipment, or in any case is within four feet of the field side of the near running rail." 49 CFR § 214.7. See ECF 1 - ¶ 25 ("'In the foul' means something is in close enough proximity to the tracks where it could be struck by a passing train or other type of rail equipment such as a hi-rail or track machine.").

[2] A double switch point derail is a safety device to prevent trains from accidently moving on to a wrong track. See 49 C.F.R. § 213.357 ("[A] derail is a device which will physically stop or divert movement of railroad rolling stock or other railroad on-track equipment past the location of the device."); see also ECF 1 - ¶ 19 "A device called a double switch point derail was installed on Storage Track 1 to protect Norfolk Southern's mainline track from unintended entry by rail equipment being moved and/or positioned on Storage Track 1 during switching operations at Defendant AIPC's and/or Defendant Treehouse's facility."

derailment in the foul on the mainline. [ECF 1 - ¶¶ 26, 27.] Some period of time after the derailment, Norfolk Southern Train 238 was traveling on the mainline through Columbia and collided with the locomotive that had been left in the foul. Consequently, Train 238 was derailed which resulted in property damage to Norfolk Southern. [ECF 1 - ¶¶ 30, 31, 32.] In addition, two of the Norfolk Southern employees were injured and filed civil actions in state court for their damages, which were settled. [ECF - ¶¶ 35 -37.] Norfolk Southern alleges that AIPC failed to properly train its employee, that AIPC had no written policies and no formal training program, and that AIPC failed to warn or give notice of the derailed equipment fouling the mainline track. [ECF 1 - ¶¶ 17, 18, 27.]

Apart from Norfolk Southern's allegations of negligence by AIPC, there also is evidence of negligence on the part of Railway related to the double switch point derail. There is an expert report that opines that the double switch point derail constructed by Norfolk Southern was not at a location required by its own rule, and the double switch point derail was not constructed to the applicable standard, and thus, the derail was unable to perform its stated purpose of protecting the main track from unauthorized train movements. [Ex.1, Rusk Report]. Again, Norfolk Southern agrees the purpose of the derail is to prevent unintentional movement from obstructing the main line. [Ex. 2, Brooks Depo, pg. 63]. There is further evidence that Norfolk Southern's own employees were negligent in that the conductor and engineer failed to follow proper procedures to react to the derailment and thereby contributed to the damages. [Ex. 3, Borzendowski Report; Ex. 4, Powers Report]. Namely, there is evidence that the derailment into the foul occurred 30 minutes before the collision, and testimony from the Norfolk Southern engineer and conductor establishes that they saw that derailed equipment in the foul before the collision, but they did not take any actions to brake or slow down Train 238. [Ex. 5, Rightmier Depo; Ex. 6, Small Depo].

***The Siding Agreement – Indemnification Clause***

For its First Cause of Action, Norfolk Southern seeks contractual indemnity under the provisions of 1995 Siding Agreement. Section 10 of the Siding Agreement provides for Liability as between the Railway and Industry, in part:

> 10. Except as otherwise provided in subsequent sections of this Agreement, the responsibility of the parties hereto, as between themselves, for death, personal injury and property loss and damage which occur by reason of or arise out of, or are incidental to, the construction, operation, maintenance, use, presence or removal of the Track or related facilities shall be determined and borne as follows:
>
> (a) Except for loss of or damage to the property of Railway caused solely by the negligence of Railway, Industry shall be solely responsible for and shall indemnify, protect and hold Railway harmless from all claims, demands, suits, judgments, liabilities. costs (including attorneys' fees) and expenses occasioned by loss of or damage to any property by fire.
>
> (b) Industry shall be solely responsible for and shall indemnify, protect and hold Railway harmless from all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death. personal injury, or loss of or damage to property arising out of or in any manner incidental to the loading into or unloading from rail cars, or the handling, storage or transmission in connection with such loading or unloading. of hazardous or flammable materials (as defined in the regulations of the United States Department of Transportation), whether or not negligence on the part of the Railway may have caused or contributed to such death, injury, loss or damage, unless the Railway's negligence is the sole cause of such death, injury, loss or damage.
>
> (c) Industry shall be solely responsible for and shall indemnify, protect and hold Railway harmless from all claims, demands, suits, judgments, liabilities. costs (including attorneys' fees) and expenses occasioned by any death, personal injury, or loss of or damage to property, caused solely by the negligence of Industry, or of the officers, agents or employees of Industry, or which arise or grow out of the violation by Industry, its officers, agents, or employees, of any of the terms of this Agreement. or which are caused by the negligence of Industry concurring with the negligence of a third party.
>
> (d) Except as may be otherwise provided in subsections (a), (b). and (c) of this Section, Railway and Industry shall be jointly responsible for and shall bear equally all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property caused by their joint and concurring negligence.

(e) Notwithstanding anything contained in this Section, and irrespective of the sole, joint, or concurring negligence of Railway, Industry shall assume sole responsibility for and shall indemnify, protect and hold Railway harmless from all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury, or loss of or damage to property, and from any fines or penalties, arising or growing out of any permitted reduced clearances shown on the attached drawing which do not conform to the clearances shown on the attached Exhibit B; or the: failure of Industry to comply with the clearance requirements of this Agreement. In this connection, it is understood that knowledge on the part of Railway of a violation of any such clearance requirements, whether such knowledge is actual or implied, shall not constitute a waiver« and shall not relieve Industry of its obligations to indemnify Railway under this Agreement.

(f) In the event that this Agreement authorizes the installation of or if Industry shall at any time install an unloading pit, a tipple, a conveyor or any other Special Facilities (as defined in Section 15 hereof), then, notwithstanding any other provisions of this Agreement, Industry shall indemnify, protect and bold Railway harmless from and against any and all claims. demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property, arising or growing out of the install~ use, maintenance or removal of any such unloading pit, tipple. conveyor, or Special Facilities, of whether the negligence of Railway may have caused or contributed to such injury, death, damage or loss.

(g) In the event that this Agreement authorizes Industry to move or Industry does move any rail cars on the Track, then, notwithstanding any other provisions of this Agreement. Industry shall indemnify, protect and hold Railway harmless from and against any and all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property arising or growing out of the movement of rail cars by Industry or its agents, regardless of whether the negligence of Railway may have caused or contributed to such injury, death, damage or loss.

(h) In the event that this Agreement authorizes Industry to install or if Industry shall hereafter install a private road crossing, gate or door across the Track, lndustry shall indemnify, protect and hold Railway harmless from and against all claims, demands, suits, judgments, liabilities, costs {including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property arising or growing out of the installation. maintenance, use or removal of said private road crossing, gate or door, or by reason of the presence of the same, whether or not the negligence of the Railway may have contributed to such injury, death, damage or loss unless such injury, death, damage or loss was caused solely by the negligence of Railway.

(i) Notwithstanding any requirement under this Agreement that track construction by

> the Industry shall be to the satisfaction of Railway and that Industry shall do all grading and furnish all such drainage facilities as may be necessary and required by Railway, Industry shall be solely responsible for, shall indemnify, protect and hold Railway harmless from and against all claims, demands, suits. judgments, liabilities. costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property arising or growing out of any grading or drainage done by or provided by the Industry.

## Argument

***Applicable Law on Indemnity Contracts***

This case is before the Court under the diversity jurisdiction provisions of 28 USC § 1332(a). Since there is no choice of law provision in the Siding Agreement in issue, South Carolina law, including its choice-of-law rules, applies to this action. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487 (1941); *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir.2004). Under South Carolina law, "a contract is controlled by the laws of the State in which it is made and to be performed." *Doctors Hosp. of Augusta, LLC v. CompTrust AGC Workers' Comp. Trust Fund*, 371 S.C. 5, 636 S.E.2d 862, 864 (2006) (quoting *Murphy v. Equitable Life Assurance Soc'y of the United States*, 197 S.C. 393, 407, 15 S.E.2d 646, 651 (1941)). Here, the contract involves performance on the Industry track located in South Carolina; thus, South Carolina law applies to the indemnification provisions upon which Norfolk Southern relies.

Indemnity is defined as "'that form of compensation in which a first party is liable to pay a second party for loss or damage the second party incurs to a third party.'" *Concord & Cumberland Horizontal Property Regime v. Concord & Cumberland, LLC*, 424 S.C. 639, 819 S.E.2d 166, 170 (Ct. App. 2018) (quoting *Laurens Emergency Med. Specialists, PA v. M.S. Bailey & Sons Bankers*, 355 S.C. 104, 584 S.E.2d 375, 377 (2003)). "'Contractual indemnity involves a transfer of risk for consideration, and the contract itself establishes the relationship between the parties.'" *Id.*

(quoting *Rock Hill Tel. Co. v. Globe Commc'ns, Inc.*, 363 S.C. 385, 611 S.E.2d 235, 237 (2005)). Indemnification contracts are typically construed in accordance with general rules of contract construction. *Id.* (citing *Campbell v. Beacon Mfg. Co.*, 313 S.C. 451, 438 S.E.2d 271, 272 (Ct. App. 1993)). However, the South Carolina Appellate Courts apply a heightened/elevated standard when an indemnity clause purports "to relieve an indemnitee from the consequences of its own negligence." *Id.* at 171 (quoting *Laurens*, 584 S.E.2d at 378–79.) In such cases, the law requires strict construction of the clause. *Id.* As explained by the South Carolina Supreme Court, deterrence is the policy basis for the heightened standard of clear and unequivocal. *Id*, (citing *Ashley II of Charleston, L.L.C. v. PCS Nitrogen, Inc., 409 S.C. 487, 4763 S.E.2d 19, 21 (2014)).*

This basic rule followed by South Carolina law is that "a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from its own negligent acts unless such intention is expressed in clear and unequivocal terms." *Id.* (quoting *Fed. Pac. Elec. v. Carolina Prod. Enters.*, 298 S.C. 23, 378 S.E.2d 56, 57 (Ct. App. 1989). "[T]he clear and unequivocal standard applies any time an indemnitee is seeking indemnification for its negligence, whether sole or concurrent." *Id.* at 172.

An ancillary rule of contract construction is that since the indemnity provision is for the benefit of Norfolk Southern and since Railway seeks to use the provision to absolve itself from liability for its own negligence, then any doubt should be resolved in favor of AIPC. *Federal Pacific Elec. v. Carolina Production Enterprises*, 378 S.E.2d 56, 58, 298 S.C. 23, 28 (S.C.App.,1989) (citing *Pride v. Southern Bell Telephone & Telegraph Co.,* 244 S.C. 615, 138 S.E.2d 155 (1964) (an exculpatory clause will be strictly construed against the party relying thereon)).

***Standard of Proof***

Rule 12(c) of the Federal Rules of Civil Procedure provides that: "After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." In considering a motion for judgment on the pleadings, the trial court views the facts presented in both the complaint and the answer. In reviewing a motion for judgment on the pleadings, a court should "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019) (internal quotation marks omitted). A motion for judgment on the pleadings is properly granted if "it appears certain that the plaintiff cannot prove any set of facts in support of [its] claim entitling [it] to relief." *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (4th Cir. 2014) (internal quotation marks and citation omitted); *Pulte Home Corporation v. Montgomery Cnty., Maryland*, 909 F.3d 685, 691 (4th Cir. 2018).

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

In this case, material "facts" for consideration on the issue of the validity of the indemnification clause depends solely on the language of the Siding Agreement. Under well-

settled law, the construction of a contract is a question of law of the court. *Beverly v. Grand Strand Regional Medical Center, LLC*, 869 S.E.2d 812, 817, 435 S.C. 594, 604 (S.C., 2022). Beyond the four-corners of the Siding Agreement and the allegations of pleadings, evidence submitted herewith outside of the pleadings serves to show that there is/will be a question of fact as to whether the Railway's and/or its train crew was negligent in aspects that concurred or contributed to the damages for which it seeks indemnification.

The facts as alleged, and proffered, show that the loss/damages from the collision did not "arise or grow out of the movement of the railcars by Industry" under the terms of Section 10(g). Further, Section 10(g) does not meet the heightened clear and unequivocal standard to allow the Railway to seek indemnification for any loss/damage arising from its own concurrent or contributing negligence in responding to the derailment.

### A. The collision did not arise or grow out of the movement of railcars by AIPC.

As alleged in the Complaint, Norfolk Southern is seeking indemnification as follows:

> Under the clear and unequivocal terms of the Contract, Defendant AIPC and/or Defendant Treehouse are contractually obligated to indemnify Norfolk Southern from all damages and expenses arising from the derailment caused by Defendant AIPC's and/or Defendant Treehouse's employee's negligent movement of rail cars on Defendant AIPC's and/or Defendant Treehouse's industry track. [ECF 1 - ¶ 45.]

Thus, it appears that Norfolk Southern is seeking indemnification under the provisions of Section 10(g): which provides:

> (g) In the event that this Agreement authorizes Industry to move or Industry does move any rail cars on the Track, then, notwithstanding any other provisions of this Agreement. Industry shall indemnify, protect and hold Railway harmless from and against any and all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property arising or growing out of the movement of rail cars by Industry or its agents, regardless of whether the negligence of Railway may have caused or contributed to such injury, death, damage or loss.

AIPC is entitled to partial judgment on this contractual indemnity claim based on several grounds. First, Section 10(g) does not provide any basis for Railway's claims for indemnification, because based on the allegations of the Complaint, the collision did not arise or grow out of the movement of the rail cars by AIPC's employee. And, as discussed below, this provision does not meet the applicable heightened clear and unequivocal standard to allow Railway to recover.

As alleged, the AIPC employee ran the locomotive and a rail car over the double switch point derail and the derailed equipment traveled off the Industry Track and onto the ground, coming to rest in the foul of the mainline track; thereafter, the AIPC employee left the scene. As alleged, the collision occurred at approximately 8:14 am. As evidenced by testimony and documentation, the derailment of the AIPC locomotive/rail cars into the foul had occurred approximately 20 minutes earlier. [Ex. 7, Holland Depo, pgs. 73-74 and Exhibit 10; Ex. 8, Thompson Depo, pgs. 56-57; Ex. 12, Marshall Depo, pg. 54; Ex. 9, Hale Depo, Exhibit; Ex. 10, Rucker Depo, Exhibit 1; Ex. 11, Blanchett Depo, pgs. 107-108]. Moreover, as evidenced by the expert report, submitted herewith and discussed above, Norfolk Southern was negligent in its construction of the derail both as to the location and applicable standard whereby the derail was unable to perform its safety purpose of protecting the main track from unauthorized train movements.

The facts, as alleged and provable, are that the loss/damages arose and grew out of the Railway's Train 238 collision with the derailed equipment in the foul of the mainline track, not the Industry Track 1. The AIPC locomotive derailing off Industry Track 1 did not damage the Industry Track or any NS Property, which would have been the double switch point derail. [Ex. 2, Brooks Depo, pg. 9]. These facts show that there was no direct causal chain between the collision and movement of the locomotive and rail cars on Track 1. *See Small v. Pioneer Machinery, Inc.*, 494 S.E.2d 835, 329 S.C. 448, 464 (Ct. App. 1997) ("Proximate cause is the efficient or direct cause

of an injury."); s*ee also Hite v. Hartford Acc. and Indem. Co.*, 344 S.E.2d 173, 288 S.C. 616, 619 (Ct. App. 1986) (comparing use with operation of motor vehicle). Rather, any potential connection was too remote or attenuated for the loss/damages to be considered as arising or growing of the movement of the rail cars on the AIPC Track 1 as allegedly covered by Section 10(g).

**B. Section 10(g) does not meet the heightened clear and unequivocal standard.**

To the extent that Railway might argue that the earlier movement of the locomotive and railcars on the AIPC Track 1 could bring the subsequently incurred loss/damages within the terms of §10(g), any variation in the possible incidents *after movement has ceased* would show that the clause would not meet the heightened clear and unequivocal standard to allow Railway to seek indemnification for any loss/damage arising from its own concurrent or contributing negligence. As noted above, any indemnification provision that attempts or purports to relieve an indemnitee from the consequences of its own negligence must be strictly construed. *Concord*, 819 S.E.2d at 171. Under the appropriate rule of strict construction, the language in Section 10(g) is not sufficiently clear and unequivocal regarding the kind of causal nexus or connection is required between the activity/actions of AIPC and the active event that directly caused the resulting damages for which Norfolk Southern seeks indemnification notwithstanding its own concurrent or contributing negligence.

In addition to the rule of strict construction, there is a primary rule of contract construction which directs that the intention of the parties is to be ascertained from the contents of the entire document. *See Koon v. Fares*, 666 S.E.2d 230, 379 S.C. 150, 155 (2008) ("The purpose of the rules of contract construction is to ascertain the intention of the parties as gathered from the contents of the entire document and not from any particular provision within the contract."); *Litchfield Co. of South Carolina, Inc. v. Kiriakides*, 349 S.E.2d 344, 290 S.C. 220, 223 (Ct. App. 1986). Section 10

regarding Liability as between AIPC and Norfolk Southern contains a number of separate clauses which address specific circumstances with differing language that creates conflicting and ambiguous situations of potential responsibility and indemnity that do not meet the clear and unequivocal standard:

- Section 10(a) purports to provide for Industry/AIPC to be solely responsible for any loss or damage "occasioned" by fire "Except for loss of or damage to the property of Railway caused solely by the negligence of Railway."

- Section 10(b) purports to make Industry/AIPC solely responsible for claims occasioned by loss/damage "arising out of or in any manner incidental to the loading into or unloading from rail cars …" unless Railway's negligence is the sole cause of the loss/damage.

- Section 10(c) purports to make Industry/AIPC solely responsible for claims which "arise or grow out of the violation by Industry" of terms of the Agreement, "or which are caused by the negligence of Industry concurring with the negligence of a third party."

- Section 10(e) purports to place sole responsibility on Railway/AIPC for loss/damage/fines/penalties "arising out of or growing out of any permitted reduced clearances…" regardless of whether Railway has knowledge of related violations.

- Section 10(f) purports to impose an obligation on Industry/AIPC to indemnify Railway for claims of loss/damage "arising or growing out of installation, use, etc, of certain special facilities – regardless of "whether the negligence of Railway may have caused or contributed to such injury, death, damage or loss."

- Section 10(g), upon which Norfolk Southern relies for its claims of contractual indemnification, purports to impose an obligation on Industry/AIPC to indemnify Railway from claims "occasioned by" any loss/damage "arising or growing out of the movement of rail cars by Industry … regardless of whether the negligence of Railway may have caused or contributed to such … loss."

- Section 10(h) purports to impose an obligation on Industry/AIPC to indemnify Railway from claims occasioned by loss/damage "arising or growing out of the installation, use …" of private road crossings or gates "whether or not the negligence of Railway may have contributed to such injury, death, damage or loss unless such injury, death, damage or loss was caused solely by the negligence of Railway."

- Section 10(i) purports to hold Industry solely responsible for claims of loss/damage arising or growing out of any grading or drainage done by or provided by the Industry with no mention of any degree of negligence on the part of Railway.

Reading all these subsections in the "Liability" section as a whole, it is readily apparent that the differing language and the varied terminology are so conflicting as to defy the applicable clear and unequivocal standard required by South Carolina law for Railway/Norfolk Southern to demand indemnification from Industry/AIPC for all loss/damages arising from the collision of Train 238 with the equipment that had been derailed earlier in the foul of the mainline.

Instead, the provision of Section 10(d) applies:

> (d) Except as may be otherwise provided in subsections (a), (b). and (c) of this Section, Railway and Industry shall be jointly responsible for and shall bear equally all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property caused by their joint and concurring negligence.

Section 10(a) clearly does not apply, on the facts as alleged, because there was no fire damage. Likewise, Section 10(b) does not apply, on the facts as alleged, because there was no loading or unloading. Section 10(c) does not apply, on the facts as alleged, because there was no violation of the Siding Agreement. Thus, Railway/Norfolk Southern and Industry/AIPC are jointly and equally responsible for loss/damage caused by their joint and concurring negligence as may be proven at trial.

## CONCLUSION

Wherefore, based on the foregoing, AIPC is entitled an order granting judgment to this Defendant on the Plaintiff's First Cause of Action for Contractual Indemnity on the separate and combined grounds that the contractual provision of the Siding Agreement upon which Norfolk Southern relies does not apply under the facts as alleged, and the indemnity clause of Section 10(g) does not meet the applicable clear and unequivocal standard required by the controlling caselaw in South Carolina.

HOOD LAW FIRM, LLC
172 Meeting Street
Post Office Box 1508
Charleston, SC 29402
Phone: (843) 577-4435
Facsimile: (843) 722-1630

***s/ John O. Radeck, Jr.***
James B. Hood (9130)
james.hood@hoodlaw.com
John O. Radeck, Jr. (12021)
john.radeck@hoodlaw.com

*Attorneys for the Defendant*
*American Italian Pasta Company.*

June 22, 2026
Charleston, South Carolina