UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Norfolk Southern Railway Company,<br><br>Plaintiff,<br><br>v.<br><br>American Italian Pasta Company,<br><br>Defendant. | ) | C.A. No. 3:25-cv-6618-SAL<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**[1] |

On July 11, 2022, Rico Blanchett, an employee of Defendant American Italian Pasta Company ("AIPC") acting in the course and scope of his employment, caused a train derailment when he lost control of a locomotive engine he was operating and wrecked the engine in the foul of Plaintiff Norfolk Southern Railway Company's ("Norfolk Southern" or "NS") mainline tracks.[2] Neither Blanchett nor AIPC warned Norfolk Southern of the danger they had created. As a result, an approaching Norfolk Southern train struck the AIPC engine and derailed off the mainline track. The accident resulted in severe injuries to two Norfolk Southern employees as well as significant damage to NS property and equipment. Norfolk Southern filed this action seeking recovery for these damages based on contractual indemnity provisions in the contract between AIPC and NS as well as causes of action for equitable indemnity, negligence, and trespass.

---

[1] Due to the overlap in arguments presented by Norfolk Southern in opposition to AIPC's motions and in support of Norfolk Southern's motion for summary judgment being filed contemporaneously herewith, for the Court's convenience and efficiency, Norfolk Southern is filing identical memoranda addressing both AIPC's motions and Norfolk Southern's motion. With the exception of changing the caption to reflect the filing in opposition to AIPC's motions and the filing in support of Norfolk Southern's motions, the memos are substantively identical.

[2] In the foul means something is in close enough proximity to the tracks where it could be struck by a passing train or other type of rail equipment such as a hi-rail or track machine. *See* Compl. ¶ 25, ECF No. 1.

AIPC's negligence is admitted by AIPC witnesses.[3] Further, the Complaint contains extensive details regarding the underlying accident, AIPC's negligence, and the indemnity provisions that establish AIPC's liability.[4] Nevertheless, despite acknowledging these allegations and conceding that "there is/will be questions of fact" at least with respect to Norfolk Southern's alleged contributory negligence,[5] AIPC brings the present motion contending that it could somehow be entitled to judgment on the pleadings and, even more curiously, that summary judgment should be entered in its favor on Norfolk Southern's contractual indemnity cause of action.[6] AIPC's motion rests on two propositions, both wrong: (1) the July 11, 2022 collision did not "arise or grow out of" AIPC's movement of railcars because roughly twenty minutes allegedly separated the AIPC engine's derailment from the collision; and (2) the indemnity language in the Contract between the parties, which obligates AIPC to indemnify Norfolk Southern "regardless of whether the negligence of Railway may have caused or contributed to" the underlying accident, is not clear and unequivocal enough to indicate the parties intended for AIPC to indemnify Norfolk Southern regardless of its alleged contributory negligence.

AIPC's motion is contrary to Fourth Circuit precedent and applicable South Carolina law. Additionally, AIPC's motion for judgment on the pleadings is procedurally improper because it relies on evidence outside the pleadings, which Rule 12(c) prohibits. That evidence only confirms that material facts pertaining to AIPC's motion are disputed, making summary judgment for AIPC under Rule 56 inappropriate. As such, AIPC's motions should be denied.

---

[3] *See infra* at 4-5; Ex. 1, AIPC 30(b)(6) Marshall Dep. 22:1-28:25, 64:22-25, 149:1-150:23; Ex. 2, Blanchett Dep. 60:21-61:7; 101:4-103:22; 129:21-130:2; 156:25-157:19.

[4] The Contract between the parties is also attached as an exhibit to the Complaint and has been reattached here for convenience. *See* Ex. 3.

[5] Def.'s Mot. at 9, ECF No. 32.

[6] AIPC has not moved for judgment on Norfolk Southern's causes of action for equitable indemnification, negligence, trespass, and punitive damages, and therefore those claims will remain pending regardless of the Court's disposition of this motion.

On the contrary, it is Norfolk Southern who is entitled to summary judgment on its contractual indemnity claim against AIPC. Accordingly, Norfolk Southern has filed its own motion for summary judgment. Because the AIPC/NS contract plainly and unambiguously entitles Norfolk Southern to indemnity for "any and all claims … and expenses occasioned by any … loss of or damage to property, arising or growing out of the movement of rail cars by Industry or its agents," and because this indemnity obligation applies "regardless of whether the negligence of Railway may have caused or contributed to such injury, death, damage, or loss," Norfolk Southern is entitled to judgment in its favor as a matter of law on its contractual indemnity claim. Norfolk Southern submits this memorandum both in opposition to AIPC's motions and in support of Norfolk Southern's motion.

## BACKGROUND

For purposes of this motion, all allegations in Norfolk Southern's Complaint must be taken as true and all facts in the extensive record developed in this case must be construed in the light most favorable to Norfolk Southern. Norfolk Southern cites to various allegations in its Complaint for purposes of the Court's ruling on AIPC's motion for judgment on the pleadings since that motion must be evaluated and decided solely on the four corners of the Complaint and any exhibits attached to the Complaint. Additional facts are cited, where necessary, to show the undisputed facts bearing on the parties' respective motions for summary judgment but cannot be considered in ruling on AIPC's Rule 12(c) motion.

On July 28, 1995, Norfolk Southern and AIPC executed a Siding Agreement (the "Contract"), which provided for the construction of AIPC's industry track and for Norfolk Southern to provide rail service to the facility. Compl. ¶ 11, ECF No. 1; *see also* Ex. 3. The 1997 Supplemental Agreement added two storage tracks at the facility, one of which included a double

switch point derail. Compl. ¶ 13, ECF No. 1. Both agreements were in force on the date of the collision at issue in this case. *Id.* Section 10 of the Contract allocates responsibility between "Railway" (Norfolk Southern) and "Industry" (AIPC) for death, personal injury, and property loss and damage "which occur by reason of or arise out of, or are incidental to, the construction, operation, maintenance, use, presence or removal of the Track or related facilities" in various situations. *Id.* at ¶ 14; *see also* Ex. 3 at 4. Section 10(g) is the subsection that governs death, personal injury, and property loss and damage connected to AIPC's movement of railcars:

> (g) In the event that this Agreement authorizes Industry to move or Industry does move any rail cars on the Track, then, notwithstanding any other provisions of this Agreement, Industry shall indemnify, protect and hold Railway harmless from and against any and all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury or loss of or damage to property, arising or growing out of the movement of rail cars by Industry or its agents, regardless of whether the negligence of Railway may have caused or contributed to such injury, death, damage, or loss.

*Id.*

AIPC concedes that the Contract authorized it to move railcars. Ex. 1, AIPC 30(b)(6) Marshall Dep. 113:24-114:9. On the morning of July 11, 2022, AIPC's employee Rico Blanchett was operating and moving a locomotive by remote control on AIPC's Storage Track 1, pulling six loaded grain railcars toward Norfolk Southern's mainline. Compl. ¶¶ 15, 20, ECF No. 1.[7] Blanchett rode the sixth railcar at the rear, which was the car farthest from the locomotive, as he moved the railcars. *Id.* at ¶ 21. He was still within AIPC's ninety-day introductory period for new hires, had originally been hired for a job that did not involve operating the locomotive, and AIPC had no written policies or procedures for locomotive operation and no formal training program. *Id.* at ¶¶ 17, 18.

---

[7] All allegations referenced in this paragraph and the following paragraphs are proven and undisputed based on the depositions of AIPC's corporate representative, Rhen Marshall, and Rico Blanchett. *See* Exs. 1 and 2.

Blanchett failed to set up the air brakes on the locomotive and railcars properly, which significantly reduced braking capability, and he lost control of the locomotive. *Id.* at ¶¶ 22, 23; *see also* Ex. 1, AIPC 30(b)(6) Marshall Dep. 22:10-23; Ex. 2, Blanchett Dep. 101:4-103:22. When asked about Blanchett's actions, AIPC's corporate representative admitted that Blanchett made some "bad decisions" and took "shortcuts" that caused the accident. *See* Ex. 1, AIPC 30(b)(6) Marshall Dep. 24:5-18; 64:22-25, 149:1-150:23. These included Blanchett operating the engine from the rear of the train, not properly setting the train brakes, and going over the NS derail and not notifying anyone of the accident. *See id.* at 22:1-28:25.

As a result of Blanchett's negligence, he ran the locomotive and the first railcar over the double switch point derail, which derailed the equipment to the left away from Norfolk Southern's mainline track as designed. Compl. ¶¶ 23, 24, ECF No. 1. The derailed equipment then traveled off the rails and on the ground until it came to rest "in the foul" of Norfolk Southern's mainline track, which means it was in close enough proximity that a passing train could strike it. *Id.* at ¶ 25.

After the derailment, Blanchett left the scene without warning or notifying Norfolk Southern that AIPC's equipment was fouling the mainline, and without asking anyone at AIPC to do so. *Id.* at ¶ 26. AIPC gave no warning or notice of any kind to Norfolk Southern. *Id.* at ¶ 27. At approximately 8:14 a.m., Norfolk Southern's Train 238, whose crew was unaware of the derailed equipment, collided with the locomotive AIPC left in the foul, derailing Train 238. *Id.* at ¶¶ 30, 31. The collision caused substantial property damage to Norfolk Southern, including loss or damage to three locomotives and multiple railcars, track and equipment damage, environmental costs and response costs, and repair and remediation costs. *Id.* at ¶ 32. The Norfolk Southern crew members operating Train 238, Raymond Rightmier and David Small, were injured as a result of the collision and filed lawsuits against Norfolk Southern and AIPC in state court. *Id.* at ¶¶ 34, 35.

On July 21, 2022, Norfolk Southern notified AIPC of the injuries and damages incurred as a result of the July 11, 2022 derailment and demanded full indemnity under the Contract, and it repeated that demand in later correspondence. *Id.* at ¶¶ 42, 43. AIPC paid Norfolk Southern's defense costs for the crew-member suits but refused to contribute to the settlements or to reimburse Norfolk Southern's damages and expenses. *Id.* at ¶ 44. Norfolk Southern filed the present action on July 1, 2025, asserting a cause of action for contractual indemnity alongside claims for equitable indemnification, negligence, trespass, and punitive damages. *See id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts in the Fourth Circuit review a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion, "accepting [the non-movant's allegations] as true and drawing all reasonable inferences in [its] favor." *Conner v. Cleveland Cnty.*, 22 F.4th 412, 416 (4th Cir. 2022). The court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* at 420 (quoting *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019)). Judgment on the pleadings should not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Allied Ins. Co. of Am. v. Premier 3, LLC*, No. 6:24-cv-00034, 2024 WL 5116918, at *1 (D.S.C. Dec. 16, 2024) (quoting *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019)); *see also* 5C Wright & Miller, *Federal Practice & Procedure* § 1367 (3d ed. 2021) ("[J]udgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district

court.”).

The pleadings include the complaint, the answer, and any exhibits attached to the complaint. *Allied Ins. Co.*, 2024 WL 5116918, at *1 (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 453 (7th Cir. 1998)); *see* Fed. R. Civ. P. 10(c) (“A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.”). Under Rule 12(d), if matters outside the pleadings are presented to the court on a motion under Rule 12(c), there are “only two options: (1) the court may exclude the additional material and decide the motion on the complaint alone or (2) it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.” *Palin v. N.Y. Times Co.*, 940 F.3d 804, 810-11 (2d Cir. 2019).

Summary judgment is appropriate “only if” the movant shows that there is no genuine dispute as to any material fact. *Escobar-Salmeron v. Moyer*, 150 F.4th 360, 372 (4th Cir. 2025) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014)). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in their favor. *See Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 732 (4th Cir. 2022) (quoting *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)). It may not weigh the evidence or make credibility determinations. *Id.*

## ARGUMENT

### I. Norfolk Southern’s Complaint Plainly Alleges Facts Entitling It to Contractual Indemnity from AIPC and Therefore AIPC’s Motion for Judgment on the Pleadings Must Be Denied.

As plainly demonstrated above, Norfolk Southern has alleged ample facts supporting its claim for contractual indemnity. Under the governing legal standard, which requires that all facts alleged in the Complaint must be taken as true and construed in the light most favorable to NS,

AIPC is not entitled to judgment on the pleadings. The Complaint alleges the existence of the Contract and applicable indemnity provisions, as well as setting forth detailed facts supporting AIPC's negligence that caused the derailment and Norfolk Southern's resulting damages. AIPC admits the existence of the Contract and indemnity provisions, acknowledges the detailed allegations of negligence, and argues only that its interpretation of the Contract should control. This is contrary to the appropriate standard. *See Conner*, 22 F.4th at 416; *Roberts*, 45 F.4th at 732 (quoting *Variety Stores*, 888 F.3d at 659). Equally important, AIPC's argument is inconsistent with controlling Fourth Circuit precedent and South Carolina indemnity law.

### A. The Fourth Circuit Has Enforced Materially Identical Railroad Indemnity Clauses Under South Carolina Law.

As an initial matter, AIPC's motion does not cite or acknowledge controlling Fourth Circuit precedent interpreting materially identical indemnity clauses in industry track construction agreements between railroads and businesses serviced by the railroad like the Contract at issue here. In *Southern Railway Co. v. Springs Mills, Inc.*, the Fourth Circuit, applying South Carolina law, enforced an industry track construction contract's indemnity clause requiring the industry to indemnify the railroad against any loss or damage "which may be caused by, result from, or arise by reason of or in connection with any limited or restricted clearances," and held that the clause "clearly contemplated indemnification against the Railway's negligent conduct." *See* 625 F.2d 496, 497-98 (4th Cir. 1980). The Fourth Circuit explained that industry track agreements "often provide for indemnification of the negligent acts of the indemnitee even in the absence of specific language mentioning such negligence," and that "[t]he law requires only that the intention to do so clearly appear from the contract as a whole." *Id.* at 498 (citing *Atlantic Coast Line R. Co. v. Robertson*, 214 F.2d 746 (4th Cir. 1944); *Brown v. Seaboard Coast Line R. Co.*, 554 F.2d 1299 (5th Cir. 1977), *cert. denied*, 434 U.S. 975; *Buckeye Cotton Oil Co. v. Louisville & N. R. Co.*, 24

F.2d 347 (6th Cir. 1928)). The Fourth Circuit described the sidetrack construction agreement as one "entered into for the convenience of" the industry, for "it was an accommodation made by the Railway so that the industry would be able to ship its goods from its own plant rather than at the Railway's terminal." 625 F.2d at 498.

The same logic applies to the Contract between Norfolk Southern and AIPC; AIPC wanted the convenience of moving railcars on its industry tracks, so Norfolk Southern made an accommodation to permit this while including clear and unequivocal language shifting the risk for any losses and damages arising or growing out of AIPC's movement of railcars to AIPC, regardless of Norfolk Southern's negligence. Because the clause in *Springs Mills* "obviously described a type of loss which could arise from the negligence of the Railway as well as that of [the industry]," and the parties nonetheless agreed the industry would indemnify against "any such loss," the court enforced it. *Id.*

In *Atlantic Coast Line*, the Fourth Circuit, again applying South Carolina law, enforced an industry track construction contract's indemnity clause with substantially similar language to the language at issue in the Contract in this case:

> (a) The Industry shall have the right to switch with its own power over said sidetrack cars delivered to it by the Railroad under the terms hereof; liability for said cars and contents to be determined in accordance with preceding provisions of this article, except that the Industry will pay to the Railroad the loss due to damage to or destruction of any car or cars delivered to the Industry and by it switched, regardless of the cause of such damage or destruction.
>
> (b) The Industry shall assume, and it hereby assumes, responsibility for and agrees to pay, and also agrees to indemnify and hold the Railroad harmless from and against all loss, damage, cost, liability, judgments or expense (including necessary counsel fees), in connection with any loss, injury or damage of any and every character and howsoever caused, whether to employees of either party or to third persons, or to the property of either party hereto, or of other persons, that may be sustained or incurred in connection with or arising from or growing out of the operation of said switching power of the Industry over the said sidetrack.

214 F.2d at 752. The Fourth Circuit held that "the language is broad enough to cover loss for any injury caused by the negligence of either party to the contract." *Id.* at 753. Just as with *Springs Mills* and the Contract between Norfolk Southern and AIPC in this case, the industry in *Atlantic Coast Line* wanted the convenience of operating its own switching locomotives on its industry tracks. *Id.* The railroad made this accommodation in exchange for the industry agreeing to accept the risk for any loss, injury, or damage "that may be sustained or incurred in connection with or arising from or growing out of the operation of said switching power of the Industry over the said sidetrack." *Id.* at 752.

Section 10(g), the indemnity provision in the Contract between AIPC and NS that is at issue here, is stronger than the clause enforced in *Springs Mills* and is substantially similar to the one enforced in *Atlantic Coast Line*. It accommodates AIPC's desire to move railcars on its industry tracks in exchange for AIPC agreeing to accept the risk for any losses or damages arising or growing out of AIPC's movement of railcars. It does not merely describe a category of loss that "could" include the railroad's negligence; it says so expressly, obligating AIPC to indemnify Norfolk Southern "regardless of whether the negligence of Railway may have caused or contributed to" the loss. Compl. ¶ 41, ECF No. 1; *see also* Ex. 3 at 4. If the *Springs Mills* clause was clear enough, Section 10(g) is clearer and tracks with the clause enforced in *Atlantic Coast Line*.

**B. Norfolk Southern's Damages and Expenses Arose or Grew Out of AIPC's Movement of Railcars, and Section 10(g) Applies.**

*Springs Mills* and *Atlantic Coast Line* require denial of AIPC's motion. However, if the Court is still inclined to further address AIPC's arguments or finds those cases somehow distinguishable, the remaining aspects of AIPC's argument fare no better.

AIPC's first argument is that the collision did not arise or grow out of the movement of

railcars by AIPC because the movement had ceased before Train 238 struck the derailed equipment. *See* Def.'s Mot. at 9, ECF No. 32. The argument misreads both the contract language and the governing causation standard under South Carolina law, and it depends on factual inferences that must be drawn in Norfolk Southern's favor. *See Conner*, 22 F.4th at 416; *Roberts*, 45 F.4th at 732 (quoting *Variety Stores*, 888 F.3d at 659). Moreover, the argument ignores AIPC's corporate witness's testimony, who admitted the accident resulted from Blanchett's movement of railcars:

> Q. Do we agree that the Norfolk Southern equipment locomotive could not have struck the AIPC locomotive if the AIPC locomotive was not in the foul of the Norfolk Southern tracks?
> A. If the – if the AIPC locomotive was not in the foul, the Norfolk Southern locomotive would not have hit it.
> Q. So there's no way this accident could have occurred if the AIPC locomotive was not in the foul of the Norfolk Southern main line tracks, correct?
> A. That is correct.
> Q. And the only reason that locomotive was in the foul is because Mr. Rico Blanchett, your employee, acting in the course and scope of his duties as an employee, as you've already told me, lost control of it and allowed it to get through the derail?
> A. That –
> [Objection]
> Q. Go ahead. You can answer.
> A. That's part of the reason, it was in the foul.

*See* Ex. 1, AIPC 30(b)(6) Marshall Dep. 28:2-25; *see also* 150:16 ("He was moving rail cars.").

**1. THE TRIGGER FOR SECTION 10(g) IS UNDISPUTED.**

Section 10(g) applies "[i]n the event that this Agreement authorizes Industry to move or Industry does move any rail cars on the Track." Compl. ¶ 14, ECF No. 1; *see also* Ex. 3 at 4. Norfolk Southern's Complaint alleges that AIPC's employee Blanchett was operating and moving a locomotive pulling six loaded grain railcars. *See* Compl. at ¶ 20. As noted above, AIPC's corporate representative Rhen Marshall admitted this. AIPC's motion concedes that its employee was moving railcars and instead argues that "there was no direct causal chain" between the

movement and the subsequent collision with Norfolk Southern's train. *See* Def.'s Mot. at 10, ECF No. 32. Since AIPC's movement of railcars is not in dispute, the only question is whether the damages and expenses for which Norfolk Southern seeks indemnification arise or grow out of that movement. Under South Carolina law, they plainly do.

**2. "ARISING OR GROWING OUT OF" IS FAR BROADER THAN PROXIMATE CAUSE.**

AIPC's argument rests on a false premise: that "arising or growing out of" requires the direct, proximate causal link of a common-law tort claim. *See* Def.'s Mot. at 10-11, ECF No. 32. South Carolina law is to the contrary. The phrase "arising out of" comprises "words of much broader significance than 'caused by' [which] are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' or in short, 'incident to or having connection with'" the activity in question. *Federated Mut. Implement & Hardware Ins. Co. v. Gupton*, 241 F.Supp. 509, 513-14 (D.S.C. 1965) (quoting *Red Ball Motor Freight v. Employers Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951)). There is no requirement that the loss be "directly and proximately caused" by the activity; it need only "ar[i]se out of" it. *Gupton*, 241 F.Supp. at 512 (citations omitted).

The South Carolina Supreme Court applies the same broad reading. In a clause of inclusion, "[t]he phrase 'arising out of' should be broadly construed" and "should mean more than causation." *Town of Duncan v. State Budget & Control Bd., Div. of Ins. Servs.*, 326 S.C. 6, 13, 482 S.E.2d 768, 772 (1997) (citing *McPherson v. Michigan Mut. Ins. Co.*, 310 S.C. 316, 426 S.E.2d 770 (1993)); *see also Concord & Cumberland Horizontal Prop. Regime v. Concord & Cumberland, LLC*, 424 S.C. 639, 652, 819 S.E.2d 166, 173 (Ct. App. 2018) ("[W]e agree … 'arising out of or resulting from' is a broad and comprehensive term."); *Campbell v. Beacon Mfg. Co.*, 313 S.C. 451, 454, 438 S.E.2d 271, 272 (Ct. App. 1993) (describing "arising out of" language

as "comprehensive and unconditional," as "[i]t makes no exceptions for tortious acts or acts outside the scope of employment."). In an inclusionary clause, the phrase connotes "incident to," "flowing from," or "having connection with" as well as "causal relation to." *See McPherson*, 310 S.C. at 319, 426 S.E.2d at 771. Indeed, unless a loss "is entirely disconnected from" the covered activity, "it falls within the 'arising out of' provision." *McPherson v. Michigan Mut. Ins. Co.*, 306 S.C. 456, 461, 412 S.E.2d 445, 448 (Ct. App. 1991), *aff'd as modified* 310 S.C. 316, 426 S.E.2d 770.

Norfolk Southern's damages and expenses arising from the collision are not disconnected from AIPC's movement of the railcars and, in fact, directly arise from that movement. The chain is direct and unbroken as alleged in the pleadings: Blanchett moved the engine and railcars; he lost control and ran them over the derail; the derailed equipment came to rest in the foul of Norfolk Southern's mainline track; and Train 238 struck that very equipment, resulting in Norfolk Southern's damages and expenses. *See* Compl. ¶¶ 20-38, ECF No. 1. The equipment that caused the collision was in the foul of the mainline track because AIPC's employee had been moving railcars on its industry track. This is a textbook example of damages "flowing from" and "growing out of" the movement. *See McPherson*, 310 S.C. at 319, 426 S.E.2d at 771; *Gupton*, 241 F.Supp. at 513-14.

**3. THE ALLEGED TWENTY-MINUTE INTERVAL BETWEEN BLANCHETT WRECKING HIS LOCOMOTIVE AND THE NORFOLK SOUTHERN TRAIN STRIKING IT DOES NOT SEVER THE CONNECTION.**

AIPC's insistence that roughly twenty minutes elapsed between the movement of the AIPC railcars and the collision does not defeat the application of Section 10(g). AIPC relies on deposition testimony to establish this length of time, which the Court is entitled to exclude as matters outside the pleadings. *See Palin*, 940 F.3d at 810-11. AIPC's own Motion concedes that the "material 'facts' for consideration on the issue of the validity of the indemnification clause <u>depends solely</u>

on the language of the Siding Agreement." Def.'s Mot. at 8, ECF No. 32 (emphasis added).

Regardless, South Carolina law does not read "arising out of" to require an instantaneous cause. To the contrary, a covered activity "need not be the sole cause of the injury; it must simply be connected with the injury," and applicability is not defeated by a concurring cause. *McPherson*, 306 S.C. at 462, 412 S.E.2d at 449 (Ct. App. 1991), *aff'd as modified* 310 S.C. 316, 426 S.E.2d 770. If the injury is related to the covered activity, "it is immaterial that other causes may also have been involved." *Id.*; *see also Campbell*, 313 S.C. at 455, 438 S.E.2d at 273 ("Even if it is conceded [indemnitee]'s own negligence was a concurring cause of the damage, it remains undisputed that the damage arose 'in part' from the [indemnitor's] employee's act … under the clear terms of the contract, [indemnitor] is obligated to indemnify [indemnitee]."). Here, the derailment of AIPC's equipment and the collision were inextricably connected: AIPC's movement placed the equipment in the foul, and the equipment remained there, with no warning from AIPC, until Train 238 arrived. *See* Compl. ¶¶ 20-38, ECF No. 1.

Persuasive authority confirms this point in the context of railroad indemnity agreements. In a Norfolk Southern derailment coverage dispute, the district court rejected the argument that "arises out of" means proximate cause, noting that such phrases are "frequently given a broader and more comprehensive meaning than that encompassed by 'proximate cause' … [and] merely require[] some causal relation or connection." *Norfolk S. Ry. Co. v. Nat'l Union Fire Ins. of Pittsburgh*, 999 F.Supp.2d 906, 912-13 (S.D.W.Va. 2014) (quoting 7 Couch on Ins. § 101:52 (3d ed. 2013)). The court held that a coal loadout derailment "arose out of" the industry's operations even though the industry did not cause the derailment, because the derailment was "foreseeably identifiable with" the industry's operations. *Id.* at 914. The same logic controls here.

### 4. AIPC'S PROXIMATE-CAUSE AUTHORITIES CUT AGAINST ITS ARGUMENT.

AIPC leans on *Small v. Pioneer Machinery* and *Hite v. Hartford Accident & Indemnity Co.* to support the proposition that there must be a "direct causal chain" between AIPC's movement of railcars and the collision with Train 238. *See* Def.'s Mot. at 10-11, ECF No. 32. Those cases define common-law proximate causation, which is the very standard South Carolina refuses to apply to the broader contractual phrase "arising out of." *See Town of Duncan*, 326 S.C. at 13, 482 S.E.2d at 772 (citing *McPherson*, 310 S.C. 316, 426 S.E.2d 770); *Gupton*, 241 F.Supp. at 512. AIPC cannot narrow a deliberately broad contract term by substituting a common law tort proximate causation test the South Carolina courts have rejected where "arising out of" language is at issue.

#### 5. AT A MINIMUM, CAUSATION IS A DISPUTED FACTUAL QUESTION.

Even if the Court were inclined to entertain AIPC's "no direct causal chain" theory, whether an injury "arose from" the covered activity "depends upon the factual context of each case." *Gupton*, 241 F.Supp. at 511. On a Rule 12(c) motion, the Court must accept Norfolk Southern's allegation that the movement caused the equipment to foul the mainline and that the collision arose from or grew out of that movement. *See Conner*, 22 F.4th at 416; Compl. ¶¶ 20-38, ECF No. 1. Even if the Court converts AIPC's motion to a motion for summary judgment, the same connection must be viewed in Norfolk Southern's favor. *See Roberts*, 45 F.4th at 732 (quoting *Variety Stores*, 888 F.3d at 659). Either way, AIPC cannot win this issue as a matter of law.

### C. Section 10(g) Satisfies South Carolina's Clear and Unequivocal Standard.

AIPC next argues that Section 10(g) does not meet South Carolina's heightened standard for indemnifying a party against its own negligence, and that the varied language across Section 10's subsections is so "conflicting" that the joint-fault default in Section 10(d) must apply instead.

*See* Def.'s Mot. at 11-13, ECF No. 32. This argument fails at every step.

**1. THE GOVERNING RULE.**

Indemnity contracts are ordinarily construed "in accordance with the rules for the construction of contracts generally." *Concord*, 424 S.C. at 647, 819 S.E.2d at 170 (quoting *Campbell*, 313 S.C. at 453, 438 S.E.2d at 272). When an indemnity clause purports "to relieve an indemnitee from the consequences of its own negligence," South Carolina requires that the clause be strictly construed and will not enforce it for that purpose "unless such intention is expressed in clear and unequivocal terms." *Fed. Pac. Elec. v. Carolina Prod. Enters.*, 298 S.C. 23, 26, 378 S.E.2d 56, 57 (Ct. App. 1989) (citations omitted). "Although there is no verbatim phrase that must be used to meet the clear and unequivocal standard, there must be some language in an indemnity clause that clearly shows the parties' intent to absolve the indemnitee of the consequences of its own concurrent negligence." *Concord*, 424 S.C. at 657, 819 S.E.2d at 176. The standard is demanding, but it is a standard about the required clarity of the language rather than a blanket prohibition. It is satisfied when the contract's language clearly shows the parties intended to shift the risk of the indemnitee's negligence. *See id.*; *Fed. Pac. Elec.*, 298 S.C. at 26, 378 S.E.2d at 57.

Additionally, common carriers by rail such as Norfolk Southern are expressly exempted from the South Carolina statute declaring indemnity agreements in construction contracts purporting to indemnify the promisee against liability for damages caused by or resulting from the sole negligence of the promisee as against public policy and unenforceable. *See* S.C. Code Ann. § 32-2-10 ("[N]or shall [this section] apply to any electric utility, electric cooperative, <u>common carriers by rail</u> and their corporate affiliates or the South Carolina Public Service Authority.") (emphasis added). This express exemption is a strong indication that the public policy of South Carolina is to permit common carriers by rail, like Norfolk Southern, to enter into such agreements.

### 2. AIPC'S OWN LEAD AUTHORITY CONFIRMS THAT SECTION 10(g)'S LANGUAGE SATISFIES THE STANDARD.

AIPC's principal case, *Concord & Cumberland*, actually supports Norfolk Southern's argument. In that decision, the South Carolina Court of Appeals gave an example of a clause indemnifying against a party's own negligence that would be consistent with South Carolina law and would be enforceable. The court explained that had the contract said the indemnitor "agrees to indemnify for all damages, **<u>regardless of whether the damages are caused in part by a party indemnified hereunder</u>**," the indemnitee "may have had a valid claim that such language showed an intent to indemnify [it] for its own concurrent negligence." 424 S.C. at 654, 819 S.E.2d at 174 (emphasis added). The clause failed in *Concord* for one reason only: a separate limiting phrase – "to the extent caused … by [the indemnitor]" – cut the indemnity back to the indemnitor's own negligence. *Id.* In the present case, there is no similar impediment in the Contract between Norfolk Southern and AIPC that would preclude enforcement of the provision providing indemnity even for Norfolk Southern's own negligence. Section 10(g) contains the specific "regardless of whether the negligence of Railway may have caused or contributed" language that was missing from *Concord* and that the Court of Appeals said would be sufficient. The Contract contains no comparable "to the extent caused by Industry" limiter. *See* Compl. ¶ 41, ECF No. 1; *see also* Ex. 3 at 4. The distinguishing feature that defeated the *Concord* clause is therefore absent here.

*Concord* also disposes of any argument that Section 10(g) fails for lack of "magic words." As the court held, "there is no verbatim phrase that must be used to meet the clear and unequivocal standard"; there need only be "some language in an indemnity clause that clearly shows the parties' intent to absolve the indemnitee of the consequences of its own concurrent negligence." *Concord*, 424 S.C. at 657, 819 S.E.2d at 176. Section 10(g)'s express reference to "the negligence of Railway" is exactly that language. *See* Compl. ¶ 41, ECF No. 1; *see also* Ex. 3 at 4.

By contrast, the clauses South Carolina courts have rejected failed because they used only general terms with no reference to the indemnitee's negligence at all. In *Federal Pacific*, the phrase "any damage suffered or liability incurred … or any loss or damage of any kind" did "not disclose an intention to indemnify for consequences arising from [the indemnitee's] own negligence." 298 S.C. at 29, 378 S.E.2d at 58-59. In contrast, no court has rejected the "regardless of whether the negligence of [the indemnitee] caused or contributed" language the *Concord* court indicated would satisfy the clear and unequivocal standard, which is used in Section 10(g). *See* 424 S.C. at 654, 819 S.E.2d at 174. Section 10(g) is not generic boilerplate language but instead speaks directly to indemnification regardless of Norfolk Southern's negligence.

### 3. READING SECTION 10 "AS A WHOLE" REINFORCES SECTION 10(g) RATHER THAN DEFEATING IT.

AIPC declares that the language across Section 10(a)–(i) is so "conflicting" that no subsection can be clear and unequivocal, so the joint-fault provision of Section 10(d) controls. Def.'s Mot. at 12-13, ECF No. 32. That argument fails for three reasons.

First, the premise is wrong. In *Concord*, the Court of Appeals parsed each subsection of a multi-part indemnity provision separately, giving effect to each clause according to its own terms without finding ambiguity merely because the provisions used different language. *See* 424 S.C. 639, 819 S.E.2d 166. Varied language across subsections addressing different risks is the standard structure of an indemnity provision, not a defect. Further, AIPC offers no more than conclusory statements in support of its contention that the indemnity scenarios described in Section 10(a)-(i) conflict and overlap with one another.

Second, Section 10(g) controls by its own terms. It applies "notwithstanding any other provisions of this Agreement" if AIPC moves railcars on the industry track. Compl. ¶ 41, ECF No. 1; *see also* Ex. 3 at 4. That language resolves any perceived tension with Section 10(d) in Section

10(g)'s favor. Section 10(d), moreover, is a generic residual clause that applies only "[e]xcept as may be otherwise provided" in other subsections and only to loss "caused by their joint and concurring negligence." *See* Ex. 3 at 3. It is the default that yields to the specific language addressing AIPC's movement of railcars covered by Section 10(g), not the other way around.

Third, AIPC's argument that the Court should read Section 10(g) out of the Contract would strip the parties' specific indemnity provision for "the movement of rail cars" of any effect. The Fourth Circuit rejected precisely that move in *Springs Mills*, holding that a special indemnity provision "would be superfluous if limited to indemnification by [the industry] only for its own negligent acts" where a separate provision already covered the industry's own negligence. *See* 625 F.2d at 498. In the context of the Contract as a whole, Section 10(g) must be given independent meaning.

### 4. STRICT CONSTRUCTION DOES NOT RESCUE AIPC.

Finally, the rules of strict construction that AIPC invokes do not save its motion. The strict construction rule asks whether the drafter of the contract "could have plainly stated" an intent to indemnify against the indemnitee's own negligence; where it did not, doubt is resolved against the drafter. *See Fed. Pac. Elec.*, 298 S.C. at 28, 378 S.E.2d at 59 (quoting *Murray v. Texas Co.*, 172 S.C. 399, 402-03, 174 S.E. 231, 232 (1934)). Setting aside the fact that the drafter of the Contract cannot be determined from the pleadings, Section 10(g) did plainly state such an intent. When the indemnity language is express, the concern justifying strict construction is satisfied and the clause is enforced, as *Springs Mills* confirms. *See Springs Mills*, 625 F.2d at 498. There is no "doubt" to resolve against Norfolk Southern because Section 10(g) specifically states that indemnity applies "regardless of whether the negligence of Railway may have caused or contributed," leaving nothing ambiguous about the allocation of risk for loss and damages arising from the movement

of railcars. *See Campbell*, 313 S.C. at 454, 438 S.E.2d at 272 ("We must look to the language of the contract, and if it unambiguous, the language alone determines the force and effect of the agreement").

**D. AIPC's Motion Is Procedurally Improper and Self-Defeating.**

Beyond its substantive defects, AIPC's motion cannot be granted in its present posture. AIPC's own arguments invoke evidence outside the pleadings – an expert report opining on the construction of the derail and deposition testimony about the timing of the derailment and the conduct of Norfolk Southern's crew. *See* Def.'s Mot. at 3, 10, ECF No. 32. That reliance is fatal on a Rule 12(c) motion and self-defeating on summary judgment.

AIPC's expert report and the deposition excerpts are not part of the pleadings, and they may not be considered on a Rule 12(c) motion without converting the motion into one for summary judgment. *See Palin*, 940 F.3d at 810-11. Accepting Norfolk Southern's well-pleaded allegations as true, as the Court must, AIPC's employee moved the engine and railcars, lost control, ran them over the derail, and left the equipment fouling the mainline, where Train 238 struck it. *See Conner*, 22 F.4th at 416; Compl. ¶¶ 20-38, ECF No. 1. Norfolk Southern's allegations state a contractual indemnity claim under Section 10(g), and AIPC cannot obtain judgment on the pleadings by disputing them.

The Court should decline to convert the Motion to one for summary judgment under Rule 12(d), as AIPC concedes that the "material 'facts' for consideration on the issue of the validity of the indemnification clause depends solely on the language of the Siding Agreement." Def.'s Mot. at 8, ECF No. 32 (emphasis added). Thus, by AIPC's own admission, the materials from outside the pleadings are not relevant to the Court's analysis of Norfolk Southern's contractual indemnity cause of action.

**II. AIPC's Motion for Summary Judgment Should Be Denied Because AIPC's Own Motion Acknowledges Disputed Material Facts.**

Even if the Court considers AIPC's motion under the Rule 56 summary judgment standard, the result is the same. On summary judgment, the Court may not itself weigh the evidence, make credibility determinations, or make the inferences requested by the movant. *Roberts*, 45 F.4th at 732 (quoting *Variety Stores*, 888 F.3d at 659). AIPC's motion asks the Court to do exactly what it may not: to credit AIPC's expert on the derail's construction and to draw AIPC's preferred inferences about timing and the crew's conduct.

AIPC has proffered two theories regarding alleged negligence by Norfolk Southern. First, it contends the Norfolk Southern train crew should have seen the derailed AIPC engine and taken action to avoid the accident. However, there is ample evidence that the crew did nothing wrong and did not contribute to the accident. *See* Ex. 4, J. Hall Dep. 44:3-46:9; Ex. 5, Small Dep. 34:8-24 (testifying that by the time the crew saw the engine fouling the track there was nothing they could do to avoid the accident); Ex. 6, Bell & Peterson Expert Report. Second, AIPC argues the Norfolk Southern derail device did not perform as intended. Again, however, this is a contested fact. *See* Ex. 7, Brooks Dep. 14:2-16:13, 18:15-21:18; Ex. 8, D. Hall Dep. 34:6-36:23; 48:6-21; 56:6-19. Indeed, the Federal Railroad Administration ("FRA") investigated this derailment and, after initially issuing Norfolk Southern a citation relating to the operation of its derail device, subsequently withdrew the citation based on its determination that the derail was installed correctly and the most effective type of derail was used. *See* Ex. 9, Fianchino Dep. 124:5-125:5. Inspector Joseph Fianchino testified that his final conclusion was that the derail device "was properly installed" and "the civil penalty was deleted" because the installation of the derail was not the problem with the derailment. *See id.* at 125:10-19; *see also* Ex. 6, Bell & Peterson Expert Report at 27-31 (explaining that the derail complied with all federal regulations and performed as

intended).

The purpose of citing this testimony is not to ask the Court to rule on these disputed issues. It simply demonstrates that AIPC's motion cannot be granted since it is dependent on a finding (a) that the Court can even consider Norfolk Southern's alleged negligence despite the Contract's language saying that NS's negligence is irrelevant as discussed above and (b) that Norfolk Southern's negligence has been established based on the current record. This cannot be true given the competing expert reports and deposition testimony cited herein. By injecting contested evidence of Norfolk Southern's supposed concurrent negligence, AIPC has created a triable issue rather than eliminating one. Where the parties' evidence conflicts, that difference of accounts is exactly the sort of genuine dispute of material fact that renders summary judgment inappropriate. *Moyer*, 150 F.4th at 372 (quoting *Tolan*, 572 U.S. at 656-57). Section 10(g) makes AIPC's concurrent negligence theory legally irrelevant in any event, as it applies "regardless of whether the negligence of Railway may have caused or contributed to" the loss. Compl. ¶ 41, ECF No. 1; Ex. 3 at 4; *see also Campbell*, 313 S.C. at 455, 438 S.E.2d at 273 ("Even if it is conceded [indemnitee]'s own negligence was a concurring cause of the damage, it remains undisputed that the damage arose 'in part' from the [indemnitor's] employee's act … under the clear terms of the contract, [indemnitor] is obligated to indemnify [indemnitee].").

## III. Norfolk Southern Is Entitled to Summary Judgment on Its Contractual Indemnity Cause of Action Under Controlling Fourth Circuit Authority Because the Interpretation of the Indemnity Contract Is a Question of Law for This Court.

Where a contract is clear and unambiguous, the questions of interpretation and enforcement are a matter of law for the Court. *Miles v. Miles*, 393 S.C. 111, 711 S.E.2d 880 (2011) ("The interpretation of an unambiguous contract is a question of law.") (citing *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 303 (2001)); *see also Campbell*, 313

S.C. at 454, 438 S.E.2d at 272 ("We must look to the language of the contract, and if it is unambiguous, the language alone determines the force and effect of the agreement."). Here, AIPC's corporate representative admitted that there was nothing unclear in the Contract regarding what was expected from the railroad or from AIPC. *See* Ex. 1, AIPC 30(b)(6) Marshall Dep. 111:19-112:9. He further admitted that the Contract permitted AIPC to move railcars and that Mr. Blanchett's movement of railcars led to the accident at issue and damage suffered by Norfolk Southern. *Id.* at 113:19-115:12.

Additionally, as discussed above, the indemnity clause in Section 10(g) required AIPC to indemnify Norfolk Southern for "any and all claims … and expenses occasioned by any … loss of or damage to property, arising or growing out of the movement of rail cars by Industry or its agents," and "regardless of whether the negligence of Railway may have caused or contributed to such injury, death, damage, or loss." Ex. 3 at 4.

Norfolk Southern will not repeat all the arguments above regarding the validity of this indemnity provision contained within the Contract between the parties, but simply reiterates that the Fourth Circuit has already held that substantially similar agreements are enforceable and require indemnity even where there is an argument that the railroad's negligence contributed to the accident. *See Springs Mills*, 625 F.2d at 498; *Atlantic Coast Line*, 214 F.2d at 752-53. In *Springs Mills*, the agreement stated the railroad was entitled to indemnity against any loss or damage "which may be caused by, result from, or arise by reason of or in connection with any limited or restricted clearances," and the Fourth Circuit held that the clause "clearly contemplated indemnification against the Railway's negligent conduct." 625 F.2d at 497-98. In *Atlantic Coast Line*, the agreement stated:

> (a) The Industry shall have the right to switch with its own power over said sidetrack cars delivered to it by the Railroad under the terms hereof; liability for

> said cars and contents to be determined in accordance with preceding provisions of this article, except that the Industry will pay to the Railroad the loss due to damage to or destruction of any car or cars delivered to the Industry and by it switched, regardless of the cause of such damage or destruction.
>
> (b) The Industry shall assume, and it hereby assumes, responsibility for and agrees to pay, and also agrees to indemnify and hold the Railroad harmless from and against all loss, damage, cost, liability, judgments or expense (including necessary counsel fees), in connection with any loss, injury or damage of any and every character and howsoever caused, whether to employees of either party or to third persons, or to the property of either party hereto, or of other persons, that may be sustained or incurred in connection with or arising from or growing out of the operation of said switching power of the Industry over the said sidetrack.

214 F.2d at 752. Here, the indemnity language is even stronger. As such, the Contract should be enforced.

Not only is the Contract's indemnity language consistent with these Fourth Circuit cases, but it also is valid under more recent South Carolina law. In the interest of efficiency, Norfolk Southern will not reiterate its prior arguments, but incorporates by reference the discussion at pages 15-19 above. Most importantly, the indemnity clause here almost mirrors the language the South Carolina Court of Appeals said would have been valid and enforceable in *Concord*. *See* 424 S.C. at 654, 819 S.E.2d at 174. Thus, regardless of whether the Court relies on controlling Fourth Circuit precedent interpreting materially similar indemnity clauses in railroad sidetrack agreements, or focuses on the standard discussed in *Concord* and other South Carolina cases, the indemnity agreement here is valid and enforceable. Norfolk Southern is entitled to summary judgment on this cause of action.

## **CONCLUSION**

Based on the foregoing authorities and arguments, AIPC's motion for judgment on the pleadings and for summary judgment on Norfolk Southern's contractual indemnity cause of action should be denied. Norfolk Southern's motion for summary judgment on its contractual indemnity

cause of action should be granted, leaving the amount of damages to which Norfolk Southern is entitled as the only remaining issue for trial.

Respectfully submitted,

s/ Ronald K. Wray, II
Ronald K. Wray, II (Fed Bar # 5763)
William E. Whitney, III (Fed Bar # 14024)
GALLIVAN, WHITE & BOYD, P.A.
55 Beattie Place, Suite 1200
P.O. Box 10589
Greenville, SC 29603
Telephone: (864) 271-5362
Facsimile: (864) 271-7502
rwray@gwblawfirm.com
wwhitney@gwblawfirm.com

*Attorneys for Plaintiff*
*Norfolk Southern Railway Company*

July 21, 2026
Columbia, South Carolina