# EXHIBIT 4

STATE OF SOUTH CAROLINA IN THE COURT OF COMMON PLEAS
COUNTY OF RICHLAND FOR THE FIFTH JUDICIAL CIRCUIT

RAYMOND S. RIGHTMIER, and his lawful wife, ANGIE RIGHTMIER, CIVIL ACTION NO. 2022-CP-40-05526

Plaintiffs,

-vs.-

RICO BLANCHETT, an individual, TREEHOUSE FOODS, INC., a foreign corporation, AMERICAN ITALIAN PASTA COMPANY, a foreign corporation, and NORFOLK SOUTHERN RAILWAY COMPANY, a foreign corporation,

Defendants.
_______________________________ /

DAVID E. SMALL, JR., CIVIL ACTION NO. 2023-CP-40-02115

Plaintiff,

-vs.-

NORFOLK SOUTHERN CORPORATION, TREEHOUSE FOODS, INC., and AMERICAN ITALIAN PASTA COMPANY,

Defendants.
_______________________________ /

VIDEOTAPED DEPOSITION OF **JOSEPH McCRAY HALL**

Taken on behalf of Plaintiffs

Pursuant to Notice of Videotaped Deposition

**SUSAN B. WILSON, INC.**
**14015 Ivylgail Drive North**
**Jacksonville, Florida 32225**
**(904) 994-6133**
**SWLSN1@yahoo.com**

and/or Mr. Rightmier?

A That day?

Q Well, either -- did you -- yeah. I understand what you're asking. You may have done rule checks with them before or after.

But in terms of what they did that day on that trip leading up that ended in this collision, did you perform any evaluation of their job performance that day?

A No. No, I did not.

Q Did you take any exception to their job performance on that trip that day before the collision?

A No.

Q Have you since reached any conclusion that either Mr. Rightmier or Mr. Small did anything incorrectly in the operation of that train and their work performance that day?

A No.

Q As you said, you've had a lot of railroad experience. How could this have been prevented?

MR. WRAY: Object to form.

But you can answer.

THE WITNESS: I mean, the operator notifying Norfolk Southern and letting them know that there was something in the foul out there is the biggest

thing.

As far as -- you know, and it kind of goes back to your last question -- as far as Mr. Small running the engine and Mr. Rightmier being, you know, the conductor, you know, it's -- I wasn't on there with them. I don't know. But, you know, that's -- probably by the time they seen it, that's a judgment call on their part. Don't know if they had enough time. But, yeah, depending on where they seen it at, you know, I don't think -- I think the biggest thing is going to be the operator letting somebody know that they derailed out there and notifying the proper people and getting our train stopped.

Going back to that tape, it looked like Mr. Small put it in emergency it looked to me about the same time they hit or maybe even right after they hit. You know, it's always going to be a judgment call on the engineer's part.

A lot of the things that we hit out there, them engines are so big they'll knock it out of the way. You know, I'm not real sure how far out they were when they seen it. I know there were some -- I think, if I remember right, there were some cars in the -- they had ahold of some cars. Plus, you

know, there was some cars in that adjacent track. So I don't know exactly how far out they were. But, you know, stopping short of that, I -- you know, I'm not sure they could have done much.

BY MR. STEEL:

Q And certainly they weren't charged with any rules violations and no exceptions were taken to anything they did, meaning the Norfolk Southern crew?

A No.

MR. STEEL: Howard, I'll let you go ahead.

MR. SPIER: Okay. Thanks, John.

CROSS EXAMINATION

BY MR. SPIER:

Q Good afternoon, sir. I'm Howard Spier, and I want to ask you a couple of questions just to follow up. Not many.

A Okay.

Q As a road foreman of engines, you've been on fair to say hundreds and hundreds of engines in your career?

A Yes.

Q And you've seen and you know where the event recorder data system is stored so that you could get -- access it and download the data when necessary?

A Pretty much, yeah. There are different