UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Norfolk Southern Railway Company,<br><br>Plaintiff,<br><br>v.<br><br>American Italian Pasta Company,<br><br>Defendant. | ) | C.A. No. 3:25-cv-6618-SAL<br><br>**PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF STEPHANIE BORZENDOWSKI AND INCORPORATED MEMORANDUM OF LAW** |

PLEASE TAKE NOTICE that Plaintiff Norfolk Southern Railway Company ("Norfolk Southern" or "NS"), by and through its undersigned counsel, and pursuant to the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), hereby moves this Court for an Order excluding the expert testimony of Stephanie Borzendowski, Ph.D. The grounds for this Motion are set forth in the incorporated memorandum of law in accordance with Local Civil Rules 7.04 and 7.05 (D.S.C.). For the reasons stated therein, Dr. Borzendowski's opinions concern matters the jury is fully able to decide without expert assistance, are unreliable, lack a sufficient factual foundation, fail to apply any reliable methodology to the facts of this case, and rest on admitted speculation. Norfolk Southern respectfully requests that the Court exclude her report and testimony in their entirety.

## INTRODUCTION

This case arises from a July 11, 2022 collision in which a locomotive operated by AIPC's employee Rico Blanchett ran over a double switch point derail and came to rest in the foul[1] of Norfolk Southern's mainline track, where it was struck by NS Train 238. Compl. ¶¶ 23-25, ECF No. 1. To support its contention that the Norfolk Southern train crew shares responsibility for the collision, AIPC offers Dr. Borzendowski, a human factors psychologist, to opine that the crew should have perceived that the derailed AIPC locomotive was in the foul and should have braked before impact. *See* Ex. 1, Borzendowski Report.

Dr. Borzendowski's opinions are not the product of expertise; rather, they are conclusions the jury is equipped to reach on its own, dressed in human factors terminology. Indeed, this Court has already excluded Dr. Borzendowski's human factors "perception" opinions, almost identical to what she offers here, as common-sense interpretations that do not require scientific or specialized knowledge. *See Koenig v. Johnson*, No. 2:18-CV-3599-DCN, 2020 WL 2308305, at *7-8 (D.S.C. May 8, 2020). And even if her opinions were the proper subject of expert testimony, they would fail Rule 702's reliability requirements at every turn. Dr. Borzendowski performed no site visit, no reenactment, no sightline study, and conducted no testing or measurement of any kind. Ex. 2, Borzendowski Dep. 16:11-17:1. Every quantitative assertion in her report – that the locomotive was "perceivable" 22 to 23 seconds before impact, that it was visible from at least 1,000 feet, and that braking came more than nine seconds after "apparent recognition" – she took from the work of other experts, not from any analysis of her own. *Id.* at 26:3-12; 28:4-23; 31:15-32:13. She admitted she did not calculate a perception response time for the Norfolk Southern

[1] In the foul means something is in close enough proximity to the tracks where it could be struck by a passing train or other type of rail equipment such as a hi-rail or track machine. *See* Compl. ¶ 25, ECF No. 1.

crew and claimed that there is "no way of doing that." *Id.* at 33:23-34:6. And she repeatedly disclaimed the very conclusions her report implies, conceding that she does not opine that the crew's supposed distraction with other tasks "caused this collision," and that she defers to other experts on when the AIPC locomotive was first perceivable to the Norfolk Southern crew and whether the collision was avoidable if the crew had braked at the 1,000-foot mark when she says the AIPC engine should have been perceivable as being in the foul. *Id.* at 34:25-35:11; 39:13-25.

Rule 702 and *Daubert* require exclusion. The Court should exclude Dr. Borzendowski's opinions and testimony.

## FACTUAL BACKGROUND[2]

On the morning of July 11, 2022, AIPC's employee Rico Blanchett was operating and moving a locomotive by remote control on AIPC's Storage Track 1, pulling six loaded grain railcars toward Norfolk Southern's mainline. Compl. ¶¶ 15, 20, ECF No. 1.[3] Blanchett rode the sixth railcar at the rear, which was the car farthest from the locomotive, as he moved the railcars. *Id.* at ¶ 21. Blanchett failed to set up the air brakes on the locomotive and railcars properly, which significantly reduced braking capability, and he lost control of the locomotive. *Id.* at ¶¶ 22, 23; *see also* ECF No. 36-1, AIPC 30(b)(6) Marshall Dep. 22:10-23; ECF No. 36-2, Blanchett Dep. 101:4-103:22. AIPC admits that Blanchett's conduct and methods of operating the locomotive violated his training and instructions. *See* ECF No. 36-1, AIPC 30(b)(6) Marshall Dep. 22:1-28:25, 64:22-25, 149:1-150:23.

At the time of the incident, Norfolk Southern had installed a device known as a double

[2] A more detailed statement of facts is included in the Memorandum in Support of Norfolk Southern's Motion for Summary Judgment. This memo only briefly references those facts pertinent to the present motion.
[3] All allegations referenced in this paragraph and the following paragraphs are proven and undisputed based on the depositions of AIPC's corporate representative, Rhen Marshall, and Rico Blanchett. *See* ECF Nos. 36-1 and 36-2.

switch point derail near the location where the AIPC industry track connected with the Norfolk Southern mainline track. A derail, as the name implies, is a device that is intended to derail moving equipment off the industry track and away from the mainline track in hopes that the equipment does not foul the track and cause an accident. Blanchett and AIPC both knew that AIPC equipment was not allowed to move through the derail. *See id.* at 23:8-24:18; ECF No. 36-2, Blanchett Dep. 157:6-21. Unfortunately, because Blanchett allowed the engine and railcars he was operating to move through the derail while still under power, even though the derail forced the equipment to the left away from Norfolk Southern's mainline track as designed, the derailed equipment still came to rest "in the foul" of Norfolk Southern's mainline track. Compl. at ¶ 25.

After the derailment, Blanchett left the scene without warning or notifying Norfolk Southern that AIPC's equipment was fouling the mainline, and without asking anyone at AIPC to do so. *Id.* at ¶ 26. AIPC gave no warning or notice of any kind to Norfolk Southern. *Id.* at ¶ 27. At approximately 8:14 a.m., Norfolk Southern's Train 238, whose crew was unaware of the derailed equipment, collided with the locomotive AIPC left in the foul, derailing Train 238. *Id.* at ¶¶ 30, 31. The Norfolk Southern crew members operating Train 238, Raymond Rightmier and David Small, were injured as a result of the collision. *Id.* at ¶¶ 34, 35. Norfolk Southern filed the present action on July 1, 2025, asserting a cause of action for contractual indemnity along with claims for equitable indemnification, negligence, trespass, and punitive damages. *See id.*

AIPC retained Dr. Borzendowski, a human factors consultant, to conduct a human factors investigation of the collision and provide opinions on the Norfolk Southern crew's perception of and response to the derailed AIPC locomotive. *See generally* Ex. 1, Borzendowski Report 2. Her assignment, as she described it, was to "take a look at the videos that captured the incident and see if [she] felt that there were any human factors opinions [she] could offer related to the perception

of [sic] in response to the stopped locomotive" on the derail. *See* Ex. 2, Borzendowski Dep. 12:12-22.

Dr. Borzendowski holds degrees in psychology and human factors psychology. Ex. 3, Borzendowski CV. She has no railroad training or experience and confirmed that none of her certifications are rail related. Ex. 2, Borzendowski Dep. 7:12-14; 8:8-10. She has never operated a locomotive or ridden in a locomotive cab. *Id.* at 7:24-8:7. She has never offered human factors opinions regarding a train-on-train collision prior to this matter. *Id.* at 8:11-13. None of the opinions she offers in this case relating to perception-reaction times of rail crews in real-world operating conditions have been peer-reviewed or tested.

Dr. Borzendowski's report offers the following opinions, each of which Norfolk Southern moves to exclude:

1. The AIPC locomotive's position in the foul "would have been readily perceivable at least 22-23 seconds before impact and available visual information would have indicated that the AIPC locomotive was stationary." Ex. 1, Borzendowski Report 4.
2. Norfolk Southern crew members Rightmier and Small "should have appreciated that contact between the two trains was imminent and a response (e.g., braking) would be required." *Id.* at 5.
3. The AIPC locomotive's position in the foul "was perceivable from at least 1000 feet away, in my opinion." *Id.*
4. The "lack of pre-impact response by Small or Rightmier" was "inconsistent with the visual information available from at least 1000 feet away indicating that the AIPC train obstructed the main line," and "[b]raking over 9 seconds after apparent recognition of the large, high contrast hazard" was "inconsistent with the aforementioned reaction time data." *Id.*

5. Conductor Rightmier's completion of paperwork "likely reduced" his opportunity to appreciate the hazard and "may have contributed" to a reduced ability to do so and "slowed his response." *Id.* at 5-6.

**LEGAL STANDARD FOR EXPERT TESTIMONY**

Rule 702 permits expert testimony only if the proponent "demonstrates to the court that it is more likely than not" that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Rule "imposes a special gatekeeping obligation on the trial judge" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Nease v. Ford Motor Co.*, 848 F.3d 219, 229-30 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597). The "importance of [the] gatekeeping function cannot be overstated." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283 (4th Cir. 2021) (quoting *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018)). In *Sardis*, the Fourth Circuit held that "the district court abused its discretion" and "improperly abdicated its critical gatekeeping role to the jury" by "rul[ing] that the issues of relevance and reliability impact only the weight of the experts' testimony, not their admissibility" and could be sufficiently addressed by cross-examination. 10 F.4th at 278-79; 281. As the Fourth Circuit made clear, "credibility is entirely distinct from reliability and relevancy, which are *preconditions* to the admissibility of expert testimony." *Sardis*, 10 F.4th at 282 (emphasis in original) (citing *Nease*, 848 F.3d at 229).

As the proponent, AIPC "must establish [admissibility] by a preponderance of proof." *Funderburk v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 706 (D.S.C. 2019) (quoting *Cooper v.*

*Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001)). Effective December 1, 2023, Rule 702 was amended to "clarify and emphasize" that preponderance standard and to reject the many decisions that had treated "the sufficiency of an expert's basis, and the application of the expert's methodology," as "questions of weight and not admissibility" – an approach the Advisory Committee called an incorrect application of Rules 702 and 104(a). *See* Fed. R. Evid. 702 Advisory Committee's Notes, 2023 Amends. Amended Rule 702(d) further "emphasize[s] that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id.* The Fourth Circuit has confirmed that the amended Rule governs and places the burden on the offering party, and that an opinion connected to existing data "only by the ipse dixit of the expert" does not meet the burden. *O'Connor v. Fairfax Taxi, Inc.*, 188 F.4th 336, 354 (4th Cir. 2026) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

In assessing reliability, courts consider, among other non-exclusive factors, (1) whether the "expert's theory or technique 'can be (and has been) tested'"; (2) whether it "has been subjected to peer review and publication"; (3) its "known or potential rate of error"; and (4) whether the "expert's methodology is generally accepted" in the relevant field. *Sardis*, 10 F.4th at 281 (quoting *Nease*, 848 F.3d at 229). The reliability inquiry is flexible. *Sardis*, 10 F.4th at 281 (quoting *Daubert*, 509 U.S. at 594-95). At its core, a reliable opinion must rest "on scientific, technical, or other specialized *knowledge* and not on belief or speculation," and any inferences must be "derived using scientific or other valid methods." *Sardis*, 10 F.4th at 281 (emphasis in original) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)).

Rule 702 also "excludes expert testimony on matters within the common knowledge of jurors." *Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990) (citing *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986)). A common-sense and common-

knowledge opinion "is not rendered admissible as an expert opinion merely because it is supported by scientific data or other specialized knowledge." *Koenig*, 2020 WL 2308305, at *8. And the assessment of a witness's credibility is "usually within the jury's exclusive purview," so Rule 702 generally bars expert testimony on that subject. *United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013) (quoting *United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995)).

## <u>ARGUMENT</u>

### I. Dr. Borzendowski's Opinions Are Common-Knowledge Observations That Will Not Assist the Jury.

Dr. Borzendowski's opinions should be excluded at the threshold because they address matters the jury is fully able to decide for itself: watching videos and making common-sense observations about what is shown. Rule 702 "excludes expert testimony on matters within the common knowledge of jurors." *Persinger*, 920 F.2d at 1188 (citing *Scott*, 789 F.2d at 1055). Testimony that, "[w]hen stripped of its technical gloss ... d[oes] no more than state the obvious," is properly excluded. *See Persinger*, 920 F.2d at 1188.

This Court has applied these principles to exclude this very expert's materially identical opinions. In *Koenig*, Judge Norton admitted an accident reconstructionist's "location opinions" but excluded his "human factor opinions" – including that a vehicle "was visible" to the plaintiffs shortly before the accident – as mere common-sense extrapolations unsupported by scientific, technical, or other specialized knowledge. Judge Norton ruled that the jury "is on an equal footing to make such factual determinations." 2020 WL 2308305, at *3-6. He separately addressed Dr. Borzendowski's own opinions and held – even though she supported them with human factors studies – that "a common-knowledge opinion is not rendered admissible as an expert opinion merely because it is supported by scientific data or other specialized knowledge," and found her "testimony recounting these opinions will not be helpful to the jury as it simply reiterates 'what is

already common knowledge and common sense.'" *Id.* at *8 (quoting *Scott*, 789 F.2d at 1055). He likewise rejected her opinions on whether the defendant could see the plaintiffs from a certain distance, noting that "evidence of the parties' respective locations leading up to the accident will be presented to the jury" and holding that "[a]nalyzing that evidence and determining whether [the defendant] could see the plaintiffs from such a distance is another determination that requires only common sense." *Koenig*, 2020 WL 2308305, at *7.

Dr. Borzendowski's opinions here are no different. The opinion that the AIPC locomotive was "readily perceivable" as being in the foul before impact is the same as the "was or was not visible" perception opinion Judge Norton excluded in *Koenig*. Ex. 1, Borzendowski Report 4; 2020 WL 2308305, at *7. And the distraction opinion asks the jury to accept a conclusion about Rightmier's attention and credibility, which invades the jury's "exclusive purview." Ex. 1, Borzendowski Report 5-6; *Lespier*, 725 F.3d at 449 (quoting *Dorsey*, 45 F.3d at 815). That this is a railroad case makes the point sharper, not weaker: the Fourth Circuit has affirmed the exclusion of a human factors expert in a railroad case whose testimony, though built on industry formulas and tables, "did no more than state the obvious" once "stripped of its technical gloss." *Persinger*, 920 F.2d at 1188.

In this case, the Norfolk Southern train's approach to the accident site and the moment of collision are all captured on a video camera mounted on the front of the locomotive such that the video data shows what the train crew saw when approaching the scene. The jury will have this video at trial, as well as internal video showing what the crew was doing leading up to the accident. Once the jury views the videos and hears where the AIPC locomotive was and what the crew did, the questions of when the crew should have perceived the AIPC locomotive as fouling the mainline and reacted "require common sense, not specialized or scientific knowledge." *Koenig*, 2020 WL

2308305, at *6. AIPC's accident reconstructionist Allen Powers agrees, testifying that the question of whether the crew should have realized the AIPC engine was in the foul at a certain distance "is what I think of as a jury evaluation." Ex. 4, Powers Dep. 111:3-20. Dr. Borzendowski's narration of her observations from the video would "supplant a jury's independent exercise of common sense," as the jury can watch the same video and make its own observations. *See Scott*, 789 F.2d at 1055. As in *Koenig*, Dr. Borzendowski's opinions should be excluded because they are common-sense observations about what a video depicts that invade the province of the jury.

## II. Independent of Their Unhelpfulness, the Opinions Do Not Rest on a Reliable Methodology Because Dr. Borzendowski Tested Nothing, Measured Nothing, and Inspected Nothing.

Even if Dr. Borzendowski's opinions could assist the jury, they are independently inadmissible because they do not rest on a reliable methodology. Whether an expert's theory "has been, or can be, tested or otherwise proved objectively" is typically a "key question" in the reliability analysis. *Sardis*, 10 F.4th at 291-92 (quoting *Daubert*, 509 U.S. at 593). An expert's opinion must rest on "specialized *knowledge* and not on belief or speculation." *Sardis*, 10 F.4th at 281 (emphasis in original) (quoting *Oglesby*, 190 F.3d at 250). In other words, just because an expert says it is so ("*ipse dixit*"), does not make it so. *See Joiner*, 522 U.S. at 146. An expert who "conducted no testing whatsoever" offers only a hypothesis, and such an opinion – however "plausible" – "is no more than a hypothesis, and it thus is not knowledge, nor is it based upon sufficient facts or data or the product of reliable principles and methods applied reliably to the facts of the case." *Sardis*, 10 F.4th at 291 (quoting *Nease*, 848 F.3d at 232).

Dr. Borzendowski did none of the work that would make her perceptibility and reaction time opinions reliable. She testified that she did not visit the accident site, did not conduct a reenactment, did not perform a sightline study, and did not perform any type of eye-tracking

experiment or measurement. *See* Ex. 2, Borzendowski Dep. 16:11-17:1.

Dr. Borzendowski agreed that her opinions rest entirely on document review in conjunction with her training, experience, education, published literature, and other experts' work in the case. *Id.* at 17:2-7. She did not create a visualization of her own and instead relied on one prepared by AIPC's reconstruction expert, Allen Powers, whose methodology for creating that visualization she does not know and who had not yet been deposed when she relied on it. *Id.* at 28:4-23; 30:9-12. This is even more problematic for Dr. Borzendowski because Mr. Powers admitted that "the whole point of our visualizations was to allow the jury to see the videos that you see from train positions are misleading," and *not* to say "this is what [the crew]'s perspective was." Ex. 4, Powers Dep. 151:15-152:11. In other words, even Mr. Powers did not claim that his visualizations establish that the train crew could see the AIPC engine in the foul from 1,000 feet away, which is a core component of Dr. Borzendowski's opinions. She also did not analyze or account for the curvature of Norfolk Southern's mainline track at the accident site outside of what was "appreciable in the video and the visualizations by Allen Powers." Ex. 2, Borzendowski Dep. 31:8-14.

Her opinions concern objectively testable propositions had she endeavored to test them: what was visible, from what distance, and during what period of time. Because she tested none of them and inspected nothing, her opinions are "no more than a hypothesis" and must be excluded. *Sardis*, 10 F.4th at 291 (quoting *Nease*, 848 F.3d at 232). AIPC may argue that relying entirely upon document review without conducting testing is "normal practice" for human factors experts. *See* Ex. 2, Borzendowski Dep. 17:2-7. But even if this premise is accepted, the Court's gatekeeping inquiry requires ensuring that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," and an opinion about

perceptibility along a particular curved track at a particular distance is precisely the kind of proposition that must be objectively grounded, not assumed. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Dr. Borzendowski's failure to do so requires the exclusion of her opinions.

### III. The Opinions Lack a Sufficient Factual Foundation and Are Connected to the Data Only by Dr. Borzendowski's *Ipse Dixit*.

Setting aside Dr. Borzendowski's failure to test or inspect, her opinions independently fail because they rest on borrowed and assumed facts rather than a foundation of her own. Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert, and an opinion may be excluded where "there is simply too great an analytical gap between the data and the opinion proffered." *O'Connor*, 188 F.4th at 354 (quoting *Joiner*, 522 U.S. at 146). An opinion "that supplies through assumption the very facts the record omits is not 'based on sufficient facts or data,'" and may be properly excluded. *O'Connor*, 188 F.4th at 354 (citing *Joiner*, 522 U.S. at 146; Fed. R. Evid. 702(b)). Similarly, where a "considerable analytical gap" separates the materials the expert reviewed from the conclusion she reached, the expert's opinions should be excluded. *See Thurman v. Sedlak*, No. 2:23-CV-536, 2024 WL 4443841, at *5 (E.D. Va. Aug. 14, 2024) (quoting *Joiner*, 522 U.S. at 146).

Dr. Borzendowski's opinions rest on borrowed and assumed facts, not on analysis she performed. She testified that the 22 to 23 second figure, as stated in her opinion that "[t]he AIPC train's location relative to the main track would have been readily perceivable at least 22-23 seconds before impact," comes from "a combination of the Secretariat report [authored by NS experts Foster Peterson and Dustin Bell] as well as Mr. Powers' report and analysis and the video captured from the Norfolk Southern locomotive." *See* Ex. 1, Borzendowski Report 4; Ex. 2,

Borzendowski Dep. 26:3-12. Similarly, the 1,000 feet figure, as stated in her opinion that "the AIPC train's position in the foul was perceivable from at least 1,000 feet away," rests largely on her "review of visualizations of the view of the Norfolk train cab depicted in the report of Allen Powers," whose methodology she does not know and who admitted, as noted above, that his visualizations were not intended to reflect what the train crew could see. Ex. 1, Borzendowski Report 5; Ex. 2, Borzendowski Dep. 28:4-23; 30:3-12; *see* Ex. 4, Powers Dep. 151:15-152:11. Likewise, Dr. Borzendowski testified that the nine second figure, as stated in her opinion that "[b]raking over 9 seconds after apparent recognition of the large, high contrast hazard is inconsistent with the aforementioned reaction time data," came "from the Secretariat report as well as Mr. Powers' analysis." Ex. 1, Borzendowski Report 5; Ex. 2, Borzendowski Dep. 31:15-23.

More telling still, she defers to other experts on the two facts her opinion actually requires – when the locomotive first became perceivable as a hazard fouling the mainline track as opposed to when it first became visible to the crew, and whether the collision was avoidable – testifying that she "would defer to the experts who are qualified to offer those opinions." *See* Ex. 2, Borzendowski Dep. 31:2-7; 39:13-25. And the very sources she borrowed from do not support the "recognition as a hazard fouling the mainline track" point her opinion assumes: Foster Peterson, co-author of the Secretariat report, stated that at 22 to 23 seconds the AIPC locomotive was visible but that "it is not yet obvious that [it had] been run through the derail," a distinction Dr. Borzendowski conceded by agreeing that someone "can perceive an object without identifying it as a hazard depending on the circumstances." Ex. 1, Borzendowski Report 3; Ex. 2, Borzendowski Dep. 27:15-21. Mr. Powers also agreed with this proposition, as he responded "[o]f course, of course" when asked if he agreed "that there's a difference in spotting or seeing an object up in front of you and realizing or appreciating that you need to take some type of action in response to

that object." Ex. 4, Powers Dep. 110:14-19. Thus, neither of the two experts whom Dr. Borzendowski cited as providing the factual basis for her opinions actually supported what she claimed.

This is the defect that controlled in *O'Connor*: an opinion that a vehicle operator "could have" avoided a collision – there, by braking or swerving – is "speculative" and not "based on sufficient facts or data" where it "depend[s] on facts that the record did not supply," including "enough time ... to perceive danger" and "enough distance for braking ... to matter." *See* 188 F.4th at 354. Dr. Borzendowski's opinion that Norfolk Southern's crew should have perceived the AIPC locomotive as fouling the mainline track at 1,000 feet and braked depends on exactly those facts, which she did not establish herself and which none of the other experts supports. The gap between Dr. Borzendowski's review of other experts' figures and Mr. Powers's visualization and her conclusion that the crew should have recognized the AIPC locomotive as a hazard fouling the mainline track at 1,000 feet and braked is the "analytical gap" Rule 702(b) and (c) forbids. *See Thurman*, 2024 WL 4443841, at *5 (quoting *Joiner*, 522 U.S. at 146). Because the 2023 amendment to Rule 702 confirms the sufficiency of an expert's basis is a question of admissibility rather than weight, this ground requires exclusion. *See* Fed. R. Evid. 702, Advisory Committee's Notes, 2023 Amends.; *see also Sardis*, 10 F.4th at 282 (citing *Nease*, 848 F.3d at 229).

## IV. Dr. Borzendowski Did Not Reliably Apply Her Principles to the Facts of This Case.

The opinions fail for the further, independent reason that Dr. Borzendowski never reliably applied her stated principles to the facts. Rule 702(d) requires that an opinion "reflects a reliable application of the principles and methods to the facts of the case," and the 2023 amendment emphasizes that each opinion "must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Fed. R. Evid. 702, Advisory

Committee's Notes, 2023 Amends. Relevance, in turn, requires "a valid scientific connection to the pertinent inquiry." *See Sardis*, 10 F.4th at 281 (citing *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019)).

The publications on which Dr. Borzendowski purportedly builds her analysis do not match the facts of this incident, as she acknowledged:

- *Gibson & Crooks* (1938) is an automobile driving study premised on a driver's ability to steer out of the "field of safe travel." Dr. Borzendowski conceded that a locomotive cannot steer in the same manner. Ex. 5, *Gibson & Crooks* (1938); Ex. 2, Borzendowski Dep. 17:13-23.
- *Cutting, Vishton & Braren* (1995) was derived from studies showing how pedestrians detect and avoid collisions, and Dr. Borzendowski conceded that "the visual stimuli that was shown was from the perspective of a pedestrian." Ex. 6, *Cutting, Vishton & Braren* (1995); Ex. 2, Borzendowski Dep. 17:24-18:9.
- *Cogan* (2025), the only train study cited and the source of her 1.36-second reaction time benchmark, is a German train-driving simulator study whose conditions diverge from this case in dispositive ways. Ex. 7, *Cogan* (2025); Ex. 1, Borzendowski Report 5; Ex. 2, Borzendowski Dep. 19:13-19. Its participants were "instructed to react to every recognized obstacle as quickly as possible without needing to evaluate their hazard potential," so as "to measure sensory perception time without considering further cognitive processing time." Ex. 7, *Cogan* (2025) at 2. Dr. Borzendowski agreed that the *Cogan* study measured train operators' ability to detect an object, not how fast they could determine whether or not it was a hazard. Ex. 2, Borzendowski Dep. 20:18-21. The participants also "knew that there was no risk of collision or need to alter the

train's operation due to the displayed objects." Ex. 7, *Cogan* (2025) at 4. The study itself cautions that "reaction times in practical settings would likely be longer due to the additional time needed to process information and determine an appropriate response," and Dr. Borzendowski had "no basis to disagree." *Id.* at 8; Ex. 2, Borzendowski Dep. 21:19-25. She conceded the distinction that renders the *Cogan* study irrelevant to the facts here: "an operator can perceive an object without identifying it as a hazard," and yet the *Cogan* study only measured perception reaction time generally, not hazard identification. Ex. 2, Borzendowski Dep. 20:18-21; 27:15-21. She further conceded that the *Cogan* study does not supply an "expected response time" in this context, only a "framework" or "benchmark." *Id.* at 33:23-34:17.

Dr. Borzendowski performed no case-specific application of these principles, testifying that she did not calculate an expected perception response time for this crew under these circumstances and compare it to an actual measured response, because in her opinion there is "no way of doing that." *Id.* at 33:23-34:17. Her ultimate opinion, that the Norfolk Southern crew's conduct was "inconsistent with the [*Cogan*] reaction time data," therefore compares the crew to a detection-only, collision-risk-free simulator benchmark that she admits is not an expected response time. Ex. 1, Borzendowski Report 5.

An opinion built on publications with no "valid scientific connection" to the pertinent inquiry and never applied to the facts of the case does not satisfy Rule 702(d). *See Sardis*, 10 F.4th at 281 (citing *Belville*, 919 F.3d at 232). That the studies may provide a general "framework" does not save Dr. Borzendowski's opinion, as this District has held that a common-knowledge perception opinion "is not rendered admissible as an expert opinion merely because it is supported by scientific data or other specialized knowledge." *Koenig*, 2020 WL 2308305, at *8.

## V. Dr. Borzendowski's Opinions About Distraction of the Train Conductor and Potential Causation Are Inadmissible Speculation.

Dr. Borzendowski also proposes to testify that the Norfolk Southern train conductor was distracted by paperwork and that this distraction contributed to his inability to perceive the fouling equipment. These opinions fail for the additional reason that they are speculative. Expert opinions "couched in terms of 'possibilities' are per se unhelpful and inadmissible," and an opinion is "fatally speculative" where it "has no tendency to prove a consequential fact by probability." *Koenig*, 2020 WL 2308305, at *7 fn3 (quoting *Samuel v. Ford Motor Co.*, 112 F. Supp. 2d 460, 470 (D. Md. 2000), *aff'd sub nom*, *Berger v. Ford Motor Co.*, 95 F. App'x 520 (4th Cir. 2004)). A reliable opinion must rest on "specialized *knowledge* and not on belief or speculation." *Sardis*, 10 F.4th at 281 (emphasis in original) (quoting *Oglesby*, 190 F.3d at 250).

By their own terms, Dr. Borzendowski's distraction opinions are possibilities, not probabilities. Her report states that Rightmier's completion of paperwork "likely reduced" and "may have contributed to a reduction in his ability to appreciate the hazard posed by the derailed AIPC train and slowed his response to the hazard." Ex. 1, Borzendowski Report 5-6. She confirmed at deposition that she is not saying to a reasonable degree of scientific certainty that doing paperwork caused this collision, instead testifying that it "can cause" issues with task performance which can affect "perceiving and responding to a potential hazard." *See* Ex. 2, Borzendowski Dep. 34:25-35:10. And as to whether engineer Small had perceived the AIPC locomotive but not yet determined it was a hazard fouling the mainline track when he reached for the brake around 9 seconds before impact, she testified, "I have no way of knowing that for certain," and that "the best I can do ... is assume." *Id.* at 33:12-22.

The distraction theory also collapses on the undisputed timeline. Conductor Rightmier put his paperwork away roughly thirty-four seconds before the collision – before the 22-to-23-second

point at which, in Dr. Borzendowski's own opinion, the locomotive in the foul became perceivable. *Id.* at 35:11-36:17. She cannot say how long his eyes were off the track while he was completing the paperwork because she did not believe "there's any way to tell that from the video." *Id.* at 37:25-38:4. And the theory has no application to engineer Small, because "there's no obvious indication in [the] video of him engaging in a secondary task." *Id.* at 38:13-17.

These opinions are "per se unhelpful and inadmissible" and "fatally speculative" under *Koenig*. *See* 2020 WL 2308305, at *7 fn3 (quoting *Samuel*, 112 F. Supp. 2d at 470). The distraction theory additionally assumes a window of inattention that the record affirmatively refutes, and thus is not "based on sufficient facts or data." *O'Connor*, 188 F.4th at 354 (citing *Joiner*, 522 U.S. at 146; Fed. R. Evid. 702(b)). That an expert need not testify to absolute certainty does not help AIPC rescue Dr. Borzendowski's opinions, as an opinion must still "prove a consequential fact by probability," and "likely," "may have," "no way of knowing," and "assume" are the language of conjecture. *See Koenig*, 2020 WL 2308305, at *7 fn3 (quoting *Samuel*, 112 F. Supp. 2d at 470).

## CONCLUSION

Dr. Borzendowski's opinions concern matters of perception, reasonable conduct, attention, and credibility that lie within the jury's province; they are unreliable because she tested, measured, and inspected nothing; they lack a sufficient factual foundation because they rest on borrowed and assumed facts and an impermissible analytical gap; they do not reliably apply any methodology to the facts of this case; and they rest on admitted speculation. For these reasons, Norfolk Southern respectfully requests that the Court exclude Dr. Borzendowski's report and testimony in their entirety and grant such further relief as the Court deems just and proper.

Respectfully submitted,

**GALLIVAN, WHITE & BOYD, P.A.**

*s/Ronald. K. Wray, II*
Ronald K. Wray, II (Fed Bar # 5763)
William E. Whitney, III (Fed Bar # 14024)
GALLIVAN, WHITE & BOYD, P.A.
55 Beattie Place, Suite 1200
P.O. Box 10589
Greenville, SC 29603
Telephone: (864) 271-5362
Facsimile: (864) 271-7502
rwray@gwblawfirm.com
wwhitney@gwblawfirm.com

*Attorneys for Plaintiff*
*Norfolk Southern Railway Company*

November 16, 2026
Columbia, South Carolina