# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Norfolk Southern Railway Company, *Plaintiff*, | ) | C/A No. 3:25-cv-06618-SAL |
| Versus | ) | **SUPPLEMENTAL EXPERT REPORT OF RONALD T. BUDRA** |
| American Italian Pasta Company, *Defendant*. | ) | |

I. INTRODUCTION AND ASSIGNMENT

I, Ronald T. Budra, have been retained by counsel for the Defendant to evaluate the damages claimed by Norfolk Southern Railway Company ("NSR") arising out of the July 11, 2022 incident referenced in this matter.

I have reviewed additional materials relating to the progression of Norfolk Southern Railway Company's ("NSR") property damage claims dated July 7, 2023, and the revised claim dated January 6, 2025. Based on this review, I offer the following supplemental opinions regarding NSR's Loss of Use ("LOU") claims, repair decisions, and associated cost escalations. NSR has still failed to provide key supporting documentation to justify its repair and loss of use figures.

This report, along with my original report, sets forth my opinions regarding NSR's claimed damages, including but not limited to: (1) Loss of Use ("LOU") charges for locomotives; (2) repair versus scrap determinations; (3) railcar ownership and disposition issues; and (4) the methodologies employed by NSR in calculating its alleged losses.

All opinions expressed herein are stated to a reasonable degree of professional probability within the fields of railroad operations, accident investigation, and claims/risk management.

II. QUALIFICATIONS

I have more than sixty (60) years of experience in the railroad industry. Over the course of my career, I have served in multiple roles, including:

- Accident Investigator
- Risk Manager
- Claims Agent
- Operations and Safety Roles within railroad systems

My experience includes the investigation of derailments and other incidents, evaluation of equipment damage, assessment of operational impacts, and analysis of claims involving locomotives and railcars.

I have extensive familiarity with industry practices, including repair-versus-scrap determinations, equipment valuation, loss-of-use considerations, and the application and limitations of Association of American Railroads ("AAR") guidelines.

A current curriculum vitae has already been provided.

III. MATERIALS CONSIDERED

1. Communications and documentation from NSR, including records, reports, estimates, photographs, and related materials;
2. NSR's claimed Loss of Use charges for locomotives #8130, #9646, and #7119;
3. NSR's initial damages demand identifying certain equipment as "scrap";
4. NSR's subsequent revised demand reclassifying certain units from "scrap" to "repaired";
5. Bates-labeled documents identified as NS 502 – 1 – 1083 and 504-000001-504-000039 produced in this matter;
6. Bates-labeled documents identified as NS 505 – 1 – 1776 produced in this matter;
7. Industry manuals and publications; and
8. My professional experience.

I reserve the right to review additional materials.

IV. METHODOLOGY

My opinions are based on:

A. Industry Experience and Practice

B. Comparative Analysis

C. Document Review and Internal Consistency

D. Economic and Operational Reasonableness

E. Evaluation of AAR-Based Methodologies

This methodology is consistent with accepted practices in railroad claims evaluation.

## V. OPINIONS

Opinion 1: Loss of Use Claims Are Unsupported and Inflated

NSR's claimed Loss of Use damages for locomotives #8130, #9646, and #7119 are speculative and improperly calculated. These claims are likely inflated by more than $4.5 million.

Opinion 2: Repair Decisions Include Non-Recoverable Betterment

NSR's repair decisions include modernization and upgrades beyond pre-incident condition, constituting non-recoverable betterment.

Opinion 3: Railcar Ownership and Disposition

NSR assumed ownership but failed to provide notice regarding disposition, undermining damages.

Opinion 4: Methodology Is Self-Serving

NSR's reliance on AAR materials requires scrutiny and may inflate damages.

## VI. SUPPLEMENTAL OPINIONS

Summary: The fair and reasonable amount for compensation for the damage to the locomotives is the depreciated value for NS 7119 and NS 8130, plus the repair costs for NS 9646, which totals **$2,923,599.42.** Alternatively, using all three depreciated values, the total is $3,271,878.95. NSR should not be entitled to any LOU (a/k/a "out of service" charges) whatsoever. Even if NSR were entitled to LOU, which they are not, their figures are highly inflated and unreasonable. The reasonable calculation is as follows: Using NSR's daily rate - $1,771 dollars x 70 days = $123,970 for each locomotive. For all three locomotives, the total LOU: $371,910.

## 1. LOCOMOTIVE SPECIFIC OPINIONS

Locomotive NS 7119

NSR initially claimed a depreciated value ("DV") for locomotive NS 7119 in the amount of $509,420.00, less salvage value of $75,900.00, for a net claimed value of $433,900.00.

In its revised claim, NSR instead seeks:

- Repair Costs: $1,429,240.00
- Loss of Use: $1,035,990.00
- Total: $2,465,230.00

Observations: This revised amount is nearly five (5) times greater than the originally asserted depreciated value. The LOU claim increased from $959,982.00 to $1,035,990.00 despite covering the same 1.77-year period. The increase appears to result solely from an increase in the applied daily/hourly rate, rather than any change in actual duration.

In my professional opinion:

- NSR cannot reasonably abandon a depreciated value position and later pursue repair costs plus extended LOU where doing so dramatically increases total damages. Such a shift is inconsistent with standard railroad claims practices and my experience in the railroad industry for over the past 60 years. In over six decades in the railroad industry, I have never observed a claim in which LOU charges were assessed during internal deliberation periods unrelated to active repair work. This unilateral shift results in an improper windfall rather than fair compensation. The increase in LOU without any change in duration reflects an unreliable and unsupported methodology.
- The DV value of Locomotive NS 7119 in the amount of $433,900.00 to make NSR whole for the damage to this locomotive.

- The alleged NSR repairs costs for this locomotive are unverified and unsupported by invoices or any supporting documentation other than NSR's own internal numbers.

Locomotive NS 8130

NSR initially claimed a net depreciated value of $1,934,699.42. NSR later claimed:

- Repair: $1,771,046.00
- Loss of Use: $2,243,805.55
- Total: $4,014,851.50

Observations: LOU alone exceeds the full depreciated value of the locomotive.

LOU increased from $2,179,358.08 to $2,243,805.55 for the same 3.7-year period, again due only to a rate increase.

In my professional opinion:

- Loss of Use damages that exceed the value of the underlying asset are inherently unreasonable. The claimed damages exceed what is necessary to make the claimant whole and instead result in an improper economic windfall.
- The DV value of Locomotive NS 8130 in the amount of $1,934,699.42 to make NSR whole for the damage to this locomotive.
- The alleged NSR repairs costs for this locomotive are unverified and unsupported by invoices or any supporting documentation other than NSR's own internal numbers.

Locomotive NS 9646

NSR initially claimed a depreciated value of $1,011,519.53 less salvage of $108,240.00, resulting in $903,279.53. NSR later claimed:

- Repair: approximately $555,000.00
- Loss of Use (initial): $2,021,066.56

- Loss of Use (revised): $2,080,833.07

  Increase: $59,766.51 due solely to a rate increase.

Observations: LOU increased by $59,766.51 with no change in duration. Total claimed damages approach three times the depreciated value.

In my professional opinion:

- LOU that exceeds twice the asset's value is unreasonable and unsupported.
- The repair cost confirms the locomotive was economically repairable.
- The increase in Loss of Use without any change in duration reflects unreliable methodology.
- Wabtec's inclusion of modernization constitutes non-recoverable betterment, the details of which cannot be known at this time without further details from Wabtec and/or NSR.
- The absence of labor-hour documentation prevents justification of extended Loss of Use.
- The claim reflects a clear failure to mitigate damages.
- The DV value of Locomotive NS 9646 in the amount of $1,011,519.53 is the most NSR should obtain for the damage to this locomotive. NSR's own repair numbers of $555,000 are reasonable, and NSR and its internal team should have known that the repairs needed for this locomotive were not going to be substantial. NS clearly misjudged the decision to repair vs. scrap for this locomotive. NS's failure in decision making is further evidenced by its decision to delay and repair the other two locomotives, when the reasonable decision given the damage was to scrap NS 7119 and NS 8130.
- The alleged NSR repairs costs for this locomotive are unverified and unsupported by invoices or any supporting documentation other than NSR's own internal numbers. Further, for this locomotive, NSR has not provided any documentation from Wabtec to enable me to differentiate between modernization and repairs.

**2. LOSS OF USE DURATION AND METHODOLOGY**

A. Unreasonable Duration

NSR claims LOU periods of up to 3.7 years. However, its own repair data reflects:

Total labor hours: 10,124

144 labor hours per day (6 workers, 3 shifts)

In my professional opinion:

- While LOU should not be recoverable in this case, a reasonable repair duration would be approximately 70 days.
- The claimed LOU periods are excessive by a factor of 10 to 20 times a reasonable repair timeframe.
- Industry practice supports repair timelines measured in weeks or months—not multiple years.
- Using NSR's daily rate - $1,771 dollars x 70 days = $123,970 for each locomotive. For all three locomotives, the total LOU: $371,910.

B. Inclusion of Non-Repair Time

NSR's LOU calculations include time associated with:

- Internal decision-making (repair vs. scrap)
- Delays in initiating repair work

In my professional opinion:

- Inclusion of internal deliberation periods in LOU is contrary to accepted industry standards.
- Such delays are unrelated to actual repair activity and improperly shift internal business costs onto AIPC.

**3. FAILURE TO MITIGATE DAMAGES**

- NSR's actions demonstrate a failure to mitigate damages, including:

- Delayed repair decisions
- Reversal of initial scrap determinations
- Extended and unjustified repair timelines
- Inflation of damages due to internal processes

In my professional opinion:

- A claimant has a duty to take reasonable steps to limit damages.
- NSR's delays and inconsistent positions directly increased the claimed LOU period.
- The extended duration of loss is attributable to internal decisions rather than NSR's own operational needs.

**4. Proper Measure of Loss of Use**

In my professional opinion: While LOU should not be recoverable at all given NSR's initial decision to scrap the locomotives, if LOU is permitted, it should be limited to the reasonable period necessary to complete repairs. Based on NSR's own labor data, a reasonable LOU period is approximately 70 days. Any LOU beyond this period is unsupported, operationally unjustified, and inconsistent with industry standards.

VII. COMPENSATION

My compensation is based on standard hourly rates. It is not contingent on outcome.

VIII. PRIOR TESTIMONY

I have not given any prior testimony, whether in a deposition or at trial, within the past five (5) years.

IX. RESERVATION OF RIGHTS

I reserve the right to supplement

X. DECLARATION

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Ronald T. Budra
Date: May 4, 2026